[No. 22610. Department Two. November 10, 1930.]

THE STATE OF WASHINGTON, *on the Relation of Anna E. Meins, Plaintiff,* v. THE SUPERIOR COURT FOR SKAGIT COUNTY, *Respondent.*[1]

*Alfred McBee,* for appellant.
*A. H. Ward,* for respondent.

FULLERTON, J.—This is an application made to this court for a writ of prohibition.

The record discloses that the relator, Anna E. Meins, was formerly the wife of Frederick W. Meins. In the latter part of the year 1927, the relator instituted an action in the superior court of King county

[1]Reported in 292 Pac. 1011.

for a divorce. The action was resisted by the husband, and a trial was had resulting in an interlocutory order declaring that the wife was entitled to a divorce. The order was entered on January 12, 1928. In the order the relator was awarded the custody of the minor children of the parties, some seven in number, and the husband was ordered to pay to the wife the sum of fifty dollars per month, ''pending the further order of the court, for the support and maintenance of his said children.'' The husband and wife at that time owned certain real property situated in the county of Skagit, and with reference thereto, the order contained the further provision, namely:

''It is further ordered, adjudged and decreed that all of the real property of the parties hereto shall be held and reserved for the support and maintenance and education of the minor children of the parties hereto. Said property is hereby impressed with a lien for such purposes and to insure the payment of the sums herein ordered to be paid, said lien is hereby decreed to be a first, prior and paramount lien upon said real estate, prior and paramount to the rights of the parties hereto or either of them and prior and paramount to the rights of any creditor or creditors of the parties above named or either of them; said real property is described as follows [describing the property].''

No appeal was taken from the interlocutory order, and it was made final by a decree of divorce entered on October 7, 1929. Subsequent to the entry of the final decree of divorce, both of the parties removed from King county to Skagit county and took up their respective residences in the latter county.

On November 19, 1929, the relator, as plaintiff, appearing by counsel who were not counsel of record in the divorce action in the court of King county, began an action in the superior court of Skagit county

against her former husband, alleging in her complaint that the husband had not paid any of the sums awarded her for the support and maintenance of the children of the parties, and that there was then due thereon the sum of $1,150.

She further alleged that she would have the care of the minor children for an ensuing period of thirteen years and that it was necessary for the proper care and support of the children that the ensuing installments payable under the award be reduced to a gross sum presently due. This gross sum she alleged to be $8,400, and in the prayer of her complaint she demanded judgment for the sum then due on the award, the further sum of $8,400, and prayed for a decree foreclosing the lien upon the real property created by the interlocutory order of the court of King county.

The defendant appeared in the action and took issue on the allegations of the complaint. The court thereupon set the cause down for trial on June 5, 1930. The defendant at the same time instituted an action in the court in which the relator's action was pending, for a modification of the decree entered in King county in so far as it related to the custody and support of the minor children of the parties; proceeding under §§ 995-2, 995-3 and 995-4 of Remington's Compiled Statutes. On the institution of the proceeding, the court ordered that notice thereof be given to the relator by service on her personally or by service on the attorneys appearing for her in the first of the actions, and further ordered that the proceeding be consolidated for trial with the pending action to be heard at the time appointed for trial of that action. Pursuant to the order the application was served on the attorneys, no personal service being had on the relator.

The parties to the respective proceedings appeared in court at the time appointed for the hearing, each

being represented by counsel. A colloquy then arose between the court and counsel as to the manner in which the actions should be tried. The relator insisted that the actions be tried separately, while the defendant contended that they be tried together. The court acceded to the relator's contentions, and heard the testimony offered in support of her action. The second action was then called for hearing, when another colloquy arose between the court and counsel over the right of the court to hear the action, the relator contending that no service of the application was made upon her, or upon any person representing her in the proceeding, and that because thereof the court was proceeding without jurisdiction over her person.

The record at that time disclosed that the application to modify the interlocutory order of the King county court had not been filed as a separate proceeding, but had been filed in the proceedings she had instituted to enforce the interlocutory order, and that the relator had filed a general demurrer thereto. During the course of the colloquy, the attorney for the relator inquired whether the application was to be heard as a part of the foreclosure action, whereupon the following occurred:

"THE COURT: Not at all; it is either in the—well, I don't know whether it is a new action or whether it is a part of the action that comes here from King county. The statute provides that they should file the petition here for the modification of that decree, now if that is it, they have done it.. MR. McBEE: I want to know whether he started a new proceeding or is it a part of the lien proceeding? THE COURT: I don't understand that it is a part of the lien proceeding, but under your objection, we are trying them separately. MR. McBEE: Inasmuch as it is not a part of the lien proceedings, there isn't any appearance made. THE COURT: Well, you can appear or default

just as you like. MR. McBEE: We default. MR. WARD: The plaintiff is in court and I have been served with a demurrer by Mr. McBee and Mr. Brickey. THE COURT: You may make a showing then. MR. McBEE: That demurrer was served before you had announced that you were starting an independent proceeding and paying a filing fee; that demurrer was served in the lien foreclosure case, otherwise it has not been served at all. THE COURT: If you want to withdraw your demurrer I don't know as there is any objection to it. MR. McBEE: The demurrer will be withdrawn. THE COURT: As far as the court is concerned we are relying upon the service of this petition on the attorneys appearing in this case here as attorneys for the plaintiff. MR. WARD: May I enter an objection to the withdrawal of their demurrer, your honor. Mr. McBee has appeared in person and has argued the case to the court without in any way stating that his appearance was special, and even if no demurrer has been filed on this appearance, an argument here would constitute a general appearance. THE COURT: You fellows are either working or you are not. MR. McBEE: We are not. The court thereupon proceeded to hear the testimony adduced by Frederick W. Meins in support of the allegations of his petition to modify the interlocutory decree of divorce. After the first witness called by the defendant Frederick W. Meins had been asked four or five questions, Mrs. Meins started to leave the courtroom. Whereupon the following conversation occurred: MR. WARD: Stay here, Mrs. Meins. I want Mrs. Meins sworn in this case. MR. McBEE: She isn't in this case. You may go, Mrs. Meins. THE COURT: She is in this case. Remain here, Mrs. Meins, they want to use you as a witness.''

In the subsequent proceedings, the relator took no part. While she was detained by the court as a witness and was sworn as such on the part of the applicant, she offered no evidence on her own behalf, nor did she cross-question those appearing for the applicant.

At the conclusion of the hearing, the court an-

nounced that it would modify the interlocutory order of the King county court in so far as it related to the future custody of certain of the minor children and the amount to be paid the relator for the support of those left in her custody. The writ of prohibition sought is to prevent this action of the court.

The sole question presented to this court is whether the trial court has jurisdiction over the person of the relator. It is not questioned, and cannot be successfully questioned, that the court has jurisdiction over the subject-matter of the proceeding; the more precise contention being that the proceeding to enforce the money allowance and the proceeding to modify the order on which the allowance is based, are separate and distinct proceedings, in no way related, and that a service upon the attorneys representing the plaintiff in the one proceeding is not a service upon her in the other.

If the premise on which the argument is based is sound, possibly there would be merit in the contention. Ordinarily, an attorney represents his client only as to the matter in which he is employed, not in other matters or proceedings which may be instituted against his client unrelated therewith. Service upon him in such unrelated matters would hardly be service upon the client. But we cannot conclude that these matters were thus unrelated. They were both founded on a common judgment. The difference in the proceedings was only in the form of the relief sought. In the proceeding to enforce the decree, we see no reason why the other party might not have come into the cause and set up by way of defense a performance or part performance of the judgment on which the proceeding was founded, and by way of affirmative relief sought a modification of the judgment.

So, on the other hand, had the application for modi-

fication been first instituted, the opposing party could have resisted the application and at the same time sought the affirmative relief she seeks by her separate action. The fact that the proceedings were separately instituted does not change their nature. They still relate to the same subject-matter, and it was within the power of the court to order them to be consolidated and tried as one proceeding. This being so, clearly, service upon the attorney in either proceeding would be a valid service on the client of that attorney.

While the evidence introduced at the hearings was not brought up with the record, the return of the court gives some insight into its character. This very conclusively shows that a proper determination of either cause cannot be correctly had without a consideration of evidence applicable to both causes. It appears that the situation of the parties affected has radically changed since the entry of the decree in the court of King county. The return shows:

"Anna E. Meins lived separate and apart from her husband from the time of the entry of the interlocutory decree until May, 1928, at which time, she and all of the children returned to live with Frederick W. Meins in Skagit county, Washington, and they thereafter lived together as a family in one household until December, 1929. In December, 1929, the superior court for Skagit county, in juvenile court proceedings, placed the two youngest children of the parties temporarily in the Washington Children's Home, and directed the said Frederick W. Meins to pay to the Washington Children's Home for the support of the children, the sum of $25 per month. Anna E. Meins left the home in December, 1929, but left all of the remaining children, except the oldest son, who had died in April, 1929, and the oldest daughter, who from and after October, 1929, lived with her maternal grandmother in Seattle, Washington, in the care, custody and control of the said Frederick W. Meins in Skagit

county, Washington, and they continued to live with him until a few days prior to the trial of the actions hereinafter referred to, when they went to visit their mother for a few days.''

■ Manifestly, it would seem that there should be a modification of the decree of the King county court, both as to the amount recoverable by the relator under that decree for allowances past due, and the disposition of the allowances subsequently to become due. If the father cared for the children during a part of the time the mother should have cared for them, he should be relieved *pro tanto* from paying the relator for their care, and since the entire allowance is for the benefit of the children, there should be such a change in the order for future allowance as to insure that the allowances shall be appropriated to that purpose. These propositions are so closely related that they can better be accomplished in one proceeding than in separate proceedings, and in one order than in separate orders.

Under our view of the proceedings, the court had jurisdiction of the subject-matter of the proceedings, and jurisdiction of the persons of the parties to the proceedings. The alternative writ heretofore issued will therefore be quashed and a mandatory writ denied.

MITCHELL, C. J., BEALS, and HOLCOMB, JJ., concur.