[Civ. No. 16142. First Dist., Div. One. Dec. 7, 1954.]

LUCILLE ANDERSON, Plaintiff and Appellant, v. WALTER E. ANDERSON, Defendant and Appellant.

Orlando J. Bowman for Plaintiff and Appellant.

Charles Reagh for Defendant and Appellant.

BRAY, J.—Defendant appeals from an ''Order for Execution and Modification of Decree'' (of divorce). Plaintiff appeals from certain portions of said order.

QUESTIONS PRESENTED

I. Does a divorce decree providing alimony and support of two children, without segregation as to amount, become void when one child reaches majority?

II. Did the court have power to modify the decree to reduce the support either retroactively or prospectively?

III. Did the court abuse its discretion in modifying the decree and in the amount for which it ordered execution to issue?

IV. Was interest allowable?

V. Effect of admission of summary of defendant's books.

## RECORD

In 1935 a final decree of divorce was entered providing that defendant pay plaintiff for the support of herself and the two minor children, Lynwood and Walter, the sum of $120 per month. Lynwood became of age November 17, 1946, Walter, February 5, 1950. Defendant paid the $120 monthly payments regularly until November 30, 1951. Thereafter he paid lesser amounts which, applied on the $120 monthly payments ordered, paid up to March 1, 1952, with $35 over. Defendant made no further payments. In September, 1952, plaintiff executed on defendant's bank account. The amount received on execution, added to the previous payments, computed at $120 per month, paid up to June 1, 1952, with a $35.32 credit on the payment due June 15, 1952. In July, 1953, there was unpaid under said decree $1,524.68. Plaintiff then filed a motion for execution for that amount and asked that the decree be modified to increase the amount payable to her to $150 per month and for attorney's fees. After a hearing, contested by defendant, the court found that $120 per month was a reasonable sum for defendant to pay plaintiff for the support of plaintiff and Walter, from November 7, 1946, the date when Lynwood became of age, to February 5, 1950, when Walter became of age, and that defendant should be required to pay said sum under the previous decree. It further found that $100 per month was a reasonable sum for plaintiff's support alone, from February 5, 1950, on. It then found that, figuring the amounts due under said judgment at $100 per month from February 5, 1950, instead of $120 per month as provided therein, defendant owed plaintiff to date $804.68. The court ordered execution to issue for that amount plus interest from January 1, 1953, and $250 attorney's fees. It modified the previous decree by reducing the support to be paid plaintiff thereafter to $100 per month. Defendant appealed from the entire decree, plaintiff from those portions denying execution for the full $120 per month and reducing the order for support to $100 per month.

### I. *Did the Decree Become Void?*

Defendant claims it did when the first son reached majority, because the amounts were not apportioned in the decree as between support for the wife and each of the children. His sole authority in his brief for this proposition is *Kahn* v. *Kahn*, 123 Cal.App.2d 819 [268 P.2d 151], which, however, does·not support his contention. That was a suit in California on a decree of a sister state which, as here, ordered support payments for wife and children without segregating amounts between them. The children had become of age. ▮ The court held the decree unenforceable in this state, saying: ". . . it is clearly the established law that if a wife seeks to recover the unpaid installments on her decree from *another court* and the amount of her reward is the combined sum of alimony and child support and her children have obtained their majorities and the court is unable to determine the portion intended for alimony as distinguished from the part allowed for child support, then the entire award of such decree is illegal and nonenforceable. [Citation.] *The judgment in suit can serve no purpose unless it be first resubmitted to the court of its origin for modification.*" (P. 824.) (See footnote on p. 824 for additional citations.) (Emphasis added.) Thus the court held merely that a decree of a sister state is unenforceable here after the children reach majority. But it pointed out, in effect, that the decree was still valid in the state of issuance, for it could be modified there.

▮ The position of the California courts as to unsegregated decrees for support of wife and children after majority of any of the latter is well settled. In *Wilkins* v. *Wilkins,* 95 Cal.App.2d 605 [213 P.2d 748], there appears an excellent review of the cases on the subject. The rule is that the court may modify the prior decree prospectively but may not make a modification operative on payments already accrued. But execution on the latter payments may not issue as a matter of right. ·The court has the discretion of determining under the equities of the situation whether execution should issue for all or any portion of the accrued amounts. (See also *Parker* v. *Parker*, 203 Cal. 787 [266 P. 283].) Thus, here, the court properly refused to consider the prior decree void, properly proceeded to determine whether execution should issue, and, if so, for what amount, and whether the decree should be modified prospectively.

However, the court ordered that defendant should only be required to pay "$100.00 of the $120.00 per month heretofore

ordered by judgment'' from February 5, 1950, the date when the younger son reached majority. The effect of this action was to give defendant on the unpaid balance a credit of $20 per month for 28 months, totaling $560, out of the $120 per month which defendant had already paid. Thus, in charging defendant $100 per month between those dates the court was, in effect, modifying the judgment retroactively for that period, a power which the court did not have. ■ ''It is the settled rule that an award for alimony may be modified as to installments to become due in the future, but as to accrued installments it is final.'' (*Zaragoza* v. *Zaragoza*, 48 Cal.App.2d 27, 28 [119 P.2d 162] ; see *Wilkins* v. *Wilkins, supra*, 95 Cal. App.2d 605.) It was not a case of refusing execution on that amount for it had already been paid. It was a case of attempted modification of the decree as to payments already made. The true amount for which execution should issue is $804.68 allowed by the court plus $560 erroneously credited against accrued but unpaid installments, making a total of $1,364.68. Interest, too, should be figured on this latter sum from January 1, 1953, the date fixed by the court.

II. *Court's Power.*

■ Plaintiff contends that as defendant made no motion to *reduce* the monthly payments, but sought only to avoid *all* payments, the court had no power to modify the decree to reduce the monthly payments. The only motion before the court, says plaintiff, was her motion to *increase* the payments. Plaintiff cites *Keck* v. *Keck,* 219 Cal. 316 [26 P.2d 300], which, however, held that where the record on appeal showed no written motion or notice of motion for modification, the reviewing court would assume that there was an oral motion with notice waived. Here, plaintiff put in issue the question of modification. Defendant answered, contending that because of claimed inability to pay due to illness, depleted financial resources and dependence on his second wife and her family he could not meet the order theretofore made. While he did not directly request a modification of the order other than that it not be enforced at all, it was in the discretion of the court, once the issue of modification was before it, to either increase or decrease the payments to meet the equities of the situation. Section 139, Civil Code, provides that the court may from time to time modify its orders for support. In *Soule* v. *Soule,* 4 Cal.App. 97 [87 P. 205], it was contended that this power to modify did not authorize the granting to

a husband the temporary exemption or release from payment of any alimony. In holding that it did, the court said (p. 101) : ''The section of the code places no limitation upon the extent to which it may make such modification, the principle upon which the authority is to be exercised being that which determines its original order, viz., that the allowance to be made by the order as modified shall be such as the court may deem just, 'having regard to the circumstances of the case.' '' It would be a strange situation, if the court in considering a wife's request for an increase and thereby having before it all of the pertinent facts including those bearing on the husband's ability to pay, could not reduce the payments if the facts showed a necessity therefor. Here the defendant was asking to be relieved from any payment whatever. As the greater includes the lesser, the court had the right, if the circumstances warranted it, to refuse to terminate the decree but instead to modify it prospectively.

III. *Court's Discretion.*

█ Plaintiff contends the court abused its discretion in allowing her only $100 per month for her support in view of the fact that she testified that her necessary expenses were at least $233 per month, that she is in poor health and has no income. However, in determining the amount of the support to be awarded, the court must take into consideration the defendant's ability to pay.

Defendant, aged 55, is a dentist with offices in Carmel. He is in poor health, able to practice not to exceed four hours a day. He married his second wife in 1951. They have an infant daughter. Defendant did not appear at the trial. In May he attended by plane a four-day shoot at Sparks, Nevada, in spite of his claim that he is in such bad physical condition that his physicians forebade him riding in an automobile over 15 miles per day. Defendant refused to produce his books, claiming privilege. He filed an affidavit stating membership in the Family and the Monterey Peninsula Golf Clubs, owning an unimproved lot in Monterey valued by him at $500, a summer home on government land in the mountains valued at $6,000, gross income from dental practice in 1952, $8,417.10, expenses $5,895.93, net income $2,521.17. He rents his office and equipment. He lives rent free in a house at Pebble Beach owned jointly by his present wife and her mother. His present wife testified that she was his part-time receptionist and helped keep his books. She stated she was familiar with his financial condition since September, 1951. Over objection

and demand that the books be produced, she testified from a penciled memo in defendant's handwriting, hereafter detailed, prepared by her and him from his books the night before the trial. Apparently plaintiff prior to trial had obtained an order for inspection of defendant's books and defendant would not permit such inspection. His wife owns a 1952 Mercury station wagon and a 1940 Packard which defendant sold her for $150. He has stock worth $500. The penciled summary gave no details but merely purported to show gross receipts and expenses through June, July and up to August 6, 1953. This summary indicated that defendant's receipts from his practice averaged $1,000 per month with average monthly expenses of almost $900, and showed a profit on August 6th for the year of only $970.80. This was the only summary of defendant's books or records that appears in evidence. His income tax returns for 1950, 1951 and 1952 were admitted. They showed 1950 receipts from practice $7,127.55; expenses $2,987.72; net $4,139.83; 1951 receipts from practice $4,817.20; expenses $2,519.45; net $2,297.75; 1952 receipts, $8,417.10; expenses $5,895.93; net $2,521.17. They showed sales of stock over the preceding three years totaling $45,312.85. However, defendant contended and the returns support his contention, that he was merely changing his portfolio. Thus, only the $12,371.33 received the last year, 1952, and not reinvested would be important. There was no real explanation of what became of this sum. While both Mrs. Anderson and defendant in his affidavit claimed no money on hand, the doctor should have been required to testify concerning it and to produce his books. But plaintiff rested her case upon the evidence before the court. Apparently the court took into consideration the fact that the doctor was living in an expensive community, Pebble Beach, that he belonged to two clubs, that his income from his profession was not large. In 1952 according to his detailed statement of expenses in his tax return, he netted only $2,521.17. In view of his sworn statement there as to his office expense (it showed dental supplies and laboratory fees alone costing over $2,700) it appeared that no longer was he getting by with expenses in the neighborhood of $2,500 as shown on the returns of the two previous years. While according to his wife, in 1953 up to August he had incurred expenses totaling $6,192.05, and no detail of them is given, it would appear that even reducing the expenses to those detailed in the preceding year and assuming a gross income for 1953 greater than in 1952, still the doctor's income from his

profession would not support his present wife and child and permit of alimony of over $100 per month. This brings us to the situation as to the $12,371.33 received by the doctor from sale of stock the preceding year. Mrs. Patti Anderson testified it all went for medical expenses although she could not account in detail for much over $2,600 of it. The doctor in his affidavit swore that he owned no property other than that herein referred to. The evidence before the court was such that the court could have concluded (as one of two reasonable deductions from the evidence) that the situation was as follows: A professional man in poor health, able to work at most four hours per day, remarried in 1951 and having a small daughter by that marriage, is living in a wealthy community in a home worth $25,000 owned by his wife and her mother. His income from his profession is low. He has been living high—two cars in the family. He belongs to two clubs. Last year he took a shooting trip to Nevada. All the indications are that he has been living expensively. Last year he received considerable money from the sale of his stocks. There is no showing that he has any of that money left. On the contrary, in his affidavit he swears he is practically broke. With the style of living he apparently has adopted he very well could have spent the stock money. Of course, the court need not have believed that he did so, nor believed his wife's testimony. But the court apparently did so. Having in mind that plaintiff was content to submit the case on the evidence then before the court, and that evidence failed to show any moneys on hand or income other than from his profession, we cannot say as a matter of law that the court was wrong or abused its discretion. If defendant squandered his money the court cannot punish him for so doing. The only question before the court was plaintiff's need (which clearly appeared) and defendant's ability to pay. Unfortunately because of his limited earnings, her need is greater than defendant's apparent ability to pay. If there were any evidence that defendant had any of the stock money left the situation might be different. We desire to point out again that plaintiff was content to submit the matter without probing into that question. At no time was she foreclosed of the right to examine defendant's books and by deposition or otherwise to examine defendant. As the court has continuing jurisdiction over alimony, if it should appear on another application that the defendant has assets other than those he listed here or that his income as disclosed by his books, or otherwise, is greater than indicated,

the court, if it deems it in the interest of justice, can change the present support order.

Having in mind the condition of the doctor's health, his reduced income because of inability to work a full day, the expenses of his office as shown by the summary, the requirement of support of his present wife and child and the other circumstances of the case, we cannot say that the court abused its discretion in reducing the alimony.

■ Defendant contends that the court abused its discretion in not refusing execution on the unpaid amount accruing from the time the older boy reached majority, contending that as the court originally found that $120 per month was a reasonable sum for the support of three people, it could not be reasonable for the support of only two people. There is no merit to this contention. As we have pointed out, the court had no power to modify the decree as of that date nor to reduce the amount for which execution could issue by any amount paid on the decree. It did have discretion to determine for how much of the accrued but unpaid alimony it would permit execution to issue. It decided $100 per month was that amount. The fact that $120 per month was reasonable for the support of three persons in 1935 would not necessarily determine that $100 was not reasonable for the support of one person in 1953. Among other considerations is the fact that the dollar in 1953 has considerably less buying power than in 1935.

IV. *Interest.*

■ The court allowed interest on $804.68 from January 1, 1953. Defendant complains of this, citing *Perry* v. *Magneson,* 207 Cal. 617, 622 [279 P. 650]. That case, however, supports the action of the trial court. It holds, in effect, that interest can be allowed only where there is a definite amount due on a definite date. Here there was such a situation. Under the decree a definite amount, $120, came due on a definite date each month. The court could have allowed interest on the larger amount. It was discretionary with the court either to grant or withhold interest, and necessarily, if granted, to determine the amount thereof. (See *Leonard* v. *Huston,* 122 Cal.App.2d 541, 547 [265 P.2d 566].) The court in its discretion found that January 1, 1953, was a reasonable date from which to start interest. Therefore, the interest should be based upon the amount then due which as we have heretofore shown is $1,364.68 instead of the amount stated in the judgment.

## V. *Summary.*

When defendant's wife produced a summary claimed to have been made from his books by defendant with her help, plaintiff objected to its introduction in evidence or to her testifying from it. The court held that the document could be admitted as a "summary of the records and the books" and that Mrs. Anderson could testify from it, but that plaintiff should have the right to examine the books themselves. Later, after she had testified as to some of the items shown on the summary the court said: "Now, if the doctor doesn't want to come here and testify and bring the books, let you see them, well of course, we will have to appoint a commissioner, referee to let him take it, make an accounting of the books." Defendant then offered to stipulate to the appointment of such a referee. Without replying to this offer, plaintiff proceeded to cross-examine Mrs. Patti Anderson further. At the end of plaintiff's case in chief a discussion between respective counsel and the court arose as to the appointment of a commissioner to go over defendant's books and records, at Monterey, defendant stating that his books were privileged to the extent of his not being required to submit to the commissioner the names of his patients. Plaintiff then stated that unless the court desired that the books be examined, plaintiff "will limit the case to the evidence as submitted." Defendant then called Mrs. Patti Anderson. She testified further concerning her financial condition and that of defendant. The case was thereupon submitted. Plaintiff now contends that the court erred in allowing in evidence the summary and Mrs. Patti Anderson's testimony from it, and that the court refused plaintiff's request to examine defendant's books. While, strictly speaking, it was error to admit the testimony and the summary, such error was waived by plaintiff. The court expressly stated that their admission was subject to plaintiff's right to examine the books, and even discussed the appointment of a commissioner in this behalf. At no time did plaintiff request that the court order an inspection of the books nor the appointment of a commissioner. Moreover, while plaintiff had an order for inspection which defendant refused to recognize, plaintiff did nothing about enforcing it. By submitting the case upon the evidence already in plaintiff waived her right to complain of that evidence or to inspect the books.

The findings, conclusions of law and the judgment are hereby modified by changing the amounts of principal and

interest for which execution shall issue to $1,364.68 with legal interest thereon from January 1, 1953. In all other respects the judgment is affirmed. Defendant shall pay costs.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied January 6, 1955, and defendant and appellant's petition for a hearing by the Supreme Court was denied February 2, 1955.