[Civ. No. 22540. First Dist., Div. Three. May 16, 1966.]

SYLVIA E. SPIVEY, Plaintiff and Respondent, v. ALFRED FURTADO et al., as Co-executors, etc., Defendants and Appellants.

Timothy A. O'Connor, David R. Sylva and Thomas P. Breen for Defendants and Appellants.

Machado, Feeley & Machado and Peter E. Tiernan for Plaintiff and Respondent.

DEVINE, J.—The executors of the will of Thomas S. Spivey appeal from a judgment which was rendered in favor of decedent's former wife in an action on a rejected claim. The claim is for arrearages for child support which had been entered in a final judgment of divorce. The divorce decree ordered Thomas Spivey to pay to respondent, Sylvia E. Spivey, alimony for herself, which is not a subject of dispute, and $350 per month ''for the support and maintenance of the said minor children; said payments to continue until the further order of the court.'' The decree, dated June 8, 1951, does not have a breakdown into allowance for each child.[1] The eldest, Richard, became 21 years of age on April 2, 1958; the second, Glenda, on May 21, 1962; Elaine, the third child, was born May 28, 1945.

Custody of the three children was awarded to the wife and this was never changed. In November 1954, however, Richard entered Stanford University and resided there. He did not resume residence with his mother. In September 1959, Glenda entered the University of California and thereafter resided elsewhere than with her mother. At the time of Richard's entering the university, Mr. Spivey reduced the amount of $350 which he had been sending his former wife by one third, and he made another reduction of one third at or about the beginning of Glenda's collegiate life. He paid tuition and living expenses for Richard and Glenda while they were at college. When they had finished college, each was of the age of majority. Mr. Spivey continued to send one third of the $350 for Elaine's support to her mother until the time of his death, which was October 1, 1962. Mrs. Spivey paid about $3,000 from September 1956 through October 1961 in medical bills for Glenda and Elaine. There is no breakdown to show how much of this amount was spent for Glenda, but we do know that she was hospitalized for hepatitis.

By the complaint on the rejected claim respondent asks for arrearages sufficient to bring the total amount payable by Mr.

---

[1] By amendment to section 139 of the Civil Code, made in 1957 (Stats. 1957, ch. 1837, p. 3243), it is now required that the decree specify the name, age, and amount of support for each child.

Spivey or his estate to the product of $350 multiplied by the number of months between the final decree of divorce and the judgment prayed for, less the amounts actually paid to Mrs. Spivey. Such an award would carry the payments beyond the age of majority of Richard and Glenda, and would also provide payment to respondent during the minority of these two children, without credit to the husband or his estate for payments which he made directly for their education and living expenses. The complaint also seeks reimbursement for major medical expenses for the children. Witnesses at the trial were Sylvia E. Spivey and an accountant. The court awarded judgment in favor of respondent in amount $16,800.88, together with interest commencing October 1, 1962. This is almost equivalent to the entire amount, exclusive of interest, found by the accountant to be due, assuming that the payments to respondent must continue after the two children reached majority and that no credit is to be allowed for the direct payments.[2]

### Effect of Attaining Majority

 Richard and Glenda each became an adult at age 21. (Civ. Code, § 25.) The obligation to support ceased at this time. (*Codorniz* v. *Codorniz*, 34 Cal.2d 811, 817 [215 P.2d 32]; *Anderson* v. *Anderson*, 129 Cal.App.2d 403, 406 [276 P.2d 862]; *Wilkins* v. *Wilkins*, 95 Cal.App.2d 605 [213 P.2d 748]; *Hale* v. *Hale*, 6 Cal.App.2d 661 [45 P.2d 246].) The obligation of the wife to support the children ended on the same day as the husband's responsibility.

The duty of both parents having ceased as each child attained majority, and the father having terminated his payments for their support before that date, the question is whether the mother may now have the decree enforced for its full amount. It should not be so enforced automatically for installments accruing after each child reached the age of 21. (*Anderson* v. *Anderson, supra*; *Wilkins* v. *Wilkins, supra*; *Hale* v. *Hale, supra*.) These cases involved applications for execution, and the one before us is a separate suit on a rejected claim, but the principle is the same. This does not mean, however, that the award of $350 could be reduced by one third merely by the arrival of the dates of majority of the elder children, or by the unilateral action of the father. As pointed out in the decisions of *Cosgriff* v. *Cosgriff* (N.D. 1964)

---

[2]Appellants concede that the amount of the judgment is substantially correct if the premises for it were sustainable.

126 N.W.2d 131, and *Gordon* v. *Ary* (Mo.App. 1962) 358 S.W.2d 81, where a decree provides for a lump sum payment by a father for support of several children, the father cannot reduce proportionately the amount paid as each individual child reaches 21, because the ratio of the amount needed to maintain the children remaining under 21 to the total amount provided in the decree may be greater than the ratio of the number of children remaining under 21 to the total number of children to which the decree originally applied. Besides, the amount properly allowable for child or children who were still minors may have increased between the date of the decree of divorce and the respective dates on which the eldest child, Richard, became an adult or the elder children became adults, because of additional needs, because of inflationary developments, because of enhanced financial condition of the father, or because of a combination of these circumstances.

In the case before us, it appears that the father's wealth, as time went on, was considerable; in respondent's brief it is referred to as being in the millions, and although we do not find support for this statement in the record, neither do we find it denied, and we do find testimony that tends to show that the father possessed a large estate. There is nothing in the findings or the judgment or the memorandum decision or in the briefs which would indicate that the trial judge kept the sum at $350 on the proposition that this amount was required or suitable to the needs of the remaining minor or minors. Judgment should be reversed in so far as it does not take into account the attainment of majority by Richard and, later, Glenda. The trial court should determine the amount up to $350 as a maximum which has been suitable for the support of the minor children (up to Glenda's majority, and for Elaine thereafter). In arriving at this amount, the trial court will not regard the share of support allowable for the minors (and later, the minor Elaine) as being limited by the fact that the father chose to provide amounts for the elder child or children which would exceed $350 per month.

As will be stated again in the second point of the case, an award for child support may not be modified retrospectively. But where the former wife seeks enforcement of the divorce decree, the court may, as held in the *Anderson* and *Wilkins* cases, withhold compulsion of payment to the extent that it would go beyond the time when the obligation of both parents to support a child or children comes to an end.

Nor will it constitute retrospective modification upwards

if the trial court determines that the allowance for support of each remaining minor should be more than one third of $350, because there never has been a judgment fixing the amount of allowance for each minor at any specific amount.

### Whether Credit Should Be Allowed for Substituted Payments

Counsel have not found, nor have we, any California case in which the question has been settled whether a father who on his own initiative reduces payments ordered by a court to be made to the mother for child support, and substitutes his own manner of supporting and educating his children, is entitled to credit against the award made by the court; and if he is so entitled, under what circumstances and to what extent. It is firmly established that modification of an allowance for child support awarded by judgment cannot be made retrospectively. Civil Code section 139 is explicit to this effect. (*Parker* v. *Parker,* 203 Cal. 787, 795 [266 P. 283] ; *Kress* v. *Kress,* 219 Cal.App.2d 173 [33 Cal.Rptr. 77] ; *Evans* v. *Evans,* 185 Cal.App.2d 566, 569-570 [8 Cal.Rptr. 412] ; *Scarlett* v. *Scarlett,* 151 Cal.App.2d 237, 239 [311 P.2d 188].) Thus, had Mr. Spivey sought a reduction in the allowance ordered to be made to his wife at any time during the minority of the two elder children, the court could not have granted his application retrospectively. But, may allowance of credit for substituted payments, the tuition and living expenses made directly by the father for Richard and Glenda, be considered not as a modification of the amounts payable for their support but as a legitimate change of manner of payment? The reported decisions, which are relatively few, are not in agreement. They are collected in 2 A.L.R.2d 831-845, and 1 A.L.R.2d Later Case Service 174-177.

It has been held in some jurisdictions that since the decree fixes the obligation it cannot be satisfied except by compliance with its terms; that the father has sufficient remedy in a motion to modify. (See cases collected in *Steckler* v. *Steckler* (Mo.App. 1956) 293 S.W.2d 129.) There is another group of cases in which it is held that the court has basic jurisdiction to credit arrears when equitable principles demand that this be done. In the majority of the latter group of cases, there was found an express or implied consent of the mother, which was the basis for the ruling. (*Goeller* v. *Goeller* (Mo.App. 1961) 346 S.W.2d 545, 548.) There is reference in some of the cases to "compulsion of circumstances" which has made necessary

direct expenditures of the husband and which requires credit because the expenditures constitute substantial compliance with the spirit and intent of the decree. (*Steckler* v. *Steckler, supra,* p. 134; *Jackson* v. *Jackson,* 306 Ky. 715 [209 S.W.2d 79]; *Schlom* v. *Schlom,* 149 Miss. 111 [115 So. 197]; *Mooty* v. *Mooty,* 131 Fla. 151 [179 So. 155]; *Mason* v. *Mason,* 148 Ore. 34 [34 P.2d 328]; *State* ex rel. *Meins* v. *Superior Court,* 159 Wash. 277 [292 P. 1011].) Since the decree itself is unmodifiable by the action of one of the parties, the defense is payment and the burden of proof of payment rests upon the father. (*Martin* v. *Martin,* 59 Wn.2d 468 [368 P.2d 170, 172].) The courts generally are reluctant to lay down general rules as to the allowance of credits in those jurisdictions where credit is allowed at all. (*Martin* v. *Martin, supra,* p. 173 [368 P.2d].)

We find it unnecessary to decide whether credit for direct payments is allowable at all in this state. Perhaps the provision in Civil Code section 139 against retrospective modification, even by the court, would prevent ratification by the court of substituted payments by the father, at least without agreement of the mother. (The nonenforcement beyond the age of majority of a decree providing for payments until further order of the court is quite different from the proposed nonenforcement of a decree because of substituted payments. The distinction is that the statute permits the court to provide for child support only during the age of minority; it makes no provision for modification of a decree which the court was empowered to make, except by further action of the court.) But if it shall be held in this state that under certain circumstances and because of certain equitable considerations, credit is to be allowed for substituted payments, this is not a case for such a ruling. Our reasons are these:

■ 1. Even if credit be not precluded by the statute, it should not be permitted easily. A judgment of a court should not be considered alterable by a party. An orderly way for modification is provided by the statute.

■ 2. The trial judge, acting as chancellor, having heard the testimony of the mother against whose testimony no witnesses were produced, and having decided against the allowance of credit, this court cannot interfere with his decision unless credit is allowable as a matter of law or there was an abuse of judicial discretion. In *Briggs* v. *Briggs,* 178 Ore. 193 [165 P.2d 772, 777, 166 A.L.R. 666], one of the cases cited by appellants, it is held that a father cannot, as a matter of law, claim credit on account of payments voluntarily made directly

to the children. For reasons given below, we find no abuse of discretion.

3. As pointed out in *Bradford* v. *Futrell,* 225 Md. 512 [171 A.2d 493, 496], in many of the cases wherein credit was allowed, there has been a finding of some express or implied consent of the mother to a mode of payment other than that called for in the decree. Although in *Mooty* v. *Mooty, supra,* 131 Fla. 151 [179 So. 155], payments made by the father for college education were allowed as a credit and the opinion makes no reference to the mother's consent, in *Briggs* v. *Briggs, supra,* another case relied upon by appellants, the court refers to the apparent consent of the wife. (165 P.2d p. 778.) ██ In the present case an attempt by means of cross-examination to show consent by the mother was singularly unsuccessful. The mother testified vehemently that she gave no consent, that she insisted that if the father wished the decree modified he should petition the court, that he had ample means to do this, that he had demanded that she take any desired court action, and that she was without funds with which to do so. Under these circumstances, surely, it was within the discretion of the trial judge to decide that the mother had not consented to the change.

4. It would not be necessary for the mother to protest the sending of the children to college in order to avoid an inference of consent to compliance with the terms of the decree. Protest no doubt would serve to alienate the children from her. ██ Indeed, one of the reasons against lightly allowing substituted payments is that the father may thereby obtain a measure of control of the children against the decree which, as in the present case, places such custody in the mother; and that he may acquire, to the mother's disadvantage, an aspect of benevolence for doing that which the court has required him to do. There is testimony by respondent that the father did take advantage of the position which he gained by substituted mode of payment in the direction of the elder children.

5. Had the father petitioned the court for modification, probably he would have been required to disclose his financial condition. It is possible that this would have required him to make substantial increases in the payments. This, of course, we do not know, but, keeping in mind that at the very least the burden of showing that equity should regard the payments by the father to satisfy the decree rests upon him or his personal representatives, we do not find such equitable considerations to have been so demonstrated as to cause interference with the judgment.

6. Although the financial standing of the father is not given mathematically in the record, it appears that he was very prosperous. On the other hand, the mother testified that she was compelled to do heavy work on a farm and that she was unable to invite her son even to bring a friend there. She testified that she was "desperately poor."

7. It seems that the mother kept a home to which the children might return had they wished. After Richard went to college, she paid some $200 for his support. Medical bills were incurred for Glenda but the date is unspecified.

8. Finally, there is the intangible element running through the record which tends to show that the father chose to decide for himself what to do for the children, despite the decree awarding custody and support to the mother. The mother testified that he told her that he was buying the companionship of his children. We realize that the father's death prevents whatever rebuttal he may have made to his wife's testimony. But the fault was his. He could have presented the matter to the court. We have no way of knowing what evidence he would have produced or what action the court might have taken.

The judgment is affirmed in so far as it denies credit to appellants for payments made to anyone other than respondent. Judgment is reversed in so far as it fails to deduct support allowance beyond the dates on which respondent's children attained majority. The court is directed to determine (with or without additional evidence) the proper allowance, not exceeding $350, to be awarded to respondent for support of Glenda and Elaine Spivey after Richard Spivey attained majority, and for Elaine Spivey after Glenda Spivey attained majority. Each party to bear own costs on appeal.

Draper, P. J., and Salsman, J., concurred.