[Civ. No. 47564. Second Dist., Div. Five. Nov. 1, 1976.]

MARJORIE A. LEHRER, Plaintiff and Respondent, v.
ALFRED LEHRER, Defendant and Appellant.

COUNSEL

Richard T. Sykes for Defendant and Appellant.

Merilyn C. Goldberg for Plaintiff and Respondent.

OPINION

**ASHBY, J.**—Respondent Marjorie A. Lehrer (hereinafter Wife) obtained a writ of execution against appellant Alfred Lehrer (hereinafter Husband) for arrearages in Husband's child support payments for their eldest minor daughter (hereinafter Daughter). Husband appeals from the trial court's order denying his motion to quash the writ of execution.

The parties were married in 1952 and separated in 1961. They had three children. The interlocutory and final judgments of divorce gave custody of the children to Wife and ordered that Husband pay for their support $20 per week per child "continuing until each child marries, attains her majority, or by further order of the Court." The amount was modified to $22 in 1965.

Daughter completed high school in June 1972 and became 18 on October 8, 1972.[1] At that time she decided to travel, and went to Mexico with a young man for six months. Husband learned of the trip when he received a letter from Daughter from Mexico on October 29, 1972. He disapproved of the idea. After speaking with Wife on the telephone the week of January 5, 1973, Husband quit sending the child support payments for Daughter.

In July 1974, Wife obtained a writ of execution against Husband in the amount of $1,892 for the unpaid payments accruing between February 1973 and June 1974. On August 29, 1974, Husband filed a notice of motion to quash the writ of execution. Husband contended that Daughter had become "emancipated" and that the writ of execution should be quashed because he was not legally obligated to make any payments after her emancipation. Wife's position was that Husband should have obtained a modification of the divorce decree based upon

---

[1] It was agreed at trial that the phrase "her majority" in the 1961 interlocutory judgment referred to 21 years of age. (See *Atwell* v. *Atwell*, 39 Cal.App.3d 383, 388 [114 Cal.Rptr. 324].)

the alleged emancipation, and, Husband having failed to do so, the decree could not be modified retroactively.

The trial court agreed with Wife's position. With her consent, the court treated the motion to quash as a request for modification of the decree, effective August 29, 1974. After hearing evidence,[2] the trial court determined that Daughter was emancipated as of October 29, 1972; modified the decree to provide that no further support be required after August 29, 1974; and denied Husband's motion to quash the writ as to any payments accruing before August 29, 1974. Husband appeals from the order denying his motion to quash the writ.

## DISCUSSION

Husband contends that the trial court's finding of Daughter's emancipation relieved him of all obligation to support her, as of the date of emancipation, and that the court therefore should have quashed the writ of execution in its entirety. This contention is without merit.

The divorce decree did not specify, as it could have,[3] that Husband's obligation to support Daughter would terminate upon her emancipation by leaving home and becoming self-supporting. It specified that the obligation was to continue "until each child marries, attains her majority, or by further order of the Court." Neither of the contingencies specified in the order having occurred, it was up to Husband to seek a modification of the decree based upon changed circumstances if he felt Daughter's conduct justified a termination of support. (See Civ. Code, § 4700, subd. (a); *Primm* v. *Primm,* 46 Cal.2d 690, 694 [299 P.2d 231].) Such modification cannot be made retroactive. (Civ. Code, § 4700, subd. (a); *Armstrong* v. *Armstrong,* 15 Cal.3d 942, 947, 950 [126 Cal.Rptr. 805, 544 P.2d 941]; *In re Marriage of Hancock,* 32 Cal.App.3d 264, 266-267 [107 Cal.Rptr. 897].)

---

[2]Husband and Wife gave conflicting testimony as to whether she told him, in the January 1973 conversation, that he should stop sending the payments. The testimony of Daughter and Wife at the hearing indicated that in Mexico Daughter lived cheaply by camping out and supported herself with $200 to $300 of her savings and prior earnings; that following the Mexican trip Daughter returned to her mother's home from May to September of 1973; that from September 1973 until March 1974, Daughter worked at a kibbutz in Israel earning her room and board and taking classes, her air fare to Israel having been paid by her grandmother; that Daughter returned to her mother's house in March 1974 until September 1974, when she went to Santa Cruz where she attends Cabrillo College. Wife sends her $25 per month for school. Wife does not question the sufficiency of evidence to support the trial court's finding of emancipation.

[3]See, *e.g., In re Marriage of Phillips,* 39 Cal.App.3d 723, 725 [114 Cal.Rptr. 362].

In *Hancock, supra,* the 1962 support order required the husband to support the children until further order of the court. In July 1970 the trial court terminated support for the eldest child, finding that the child left home and became self-supporting in April 1969. The husband later attempted to interpret that order to mean his obligation ceased as of April 1969 rather than July 1970, and he sought credit for payments he had made during that period. The appellate court held he was not entitled to any credit and that the 1962 support order could not be modified retroactively.[4]

Husband cites no authority for the proposition that in the absence of a prior order for such contingency his obligation to support his child *automatically* terminates upon her "emancipation" by leaving home and becoming self-supporting. He does cite some cases involving a child who reached the *age of majority* or who *married,* in which the father was permitted to resist a writ of execution for support payments claimed after such date. (See *Codorniz* v. *Codorniz,* 34 Cal.2d 811, 817 [215 P.2d 32]; *Hale* v. *Hale,* 6 Cal.App.2d 661, 663-664 [45 P.2d 246]; see also *Wilkins* v. *Wilkins,* 95 Cal.App.2d 605, 607, 609 [213 P.2d 748]; *Anderson* v. *Anderson,* 129 Cal.App.2d 403, 406 [276 P.2d 862].) These cases are inapposite since the type of emancipation claimed here is unlike marriage or reaching the age of majority. The alleged emancipation occurred not as a result of a simple and determinable event such as a marriage ceremony or a birthday but based upon the totality of circumstances and a variety of acts and attitudes. (See *Martinez* v. *Southern Pacific Co.,* 45 Cal.2d 244, 253 [288 P.2d 868]; *Perkins* v. *Robertson,* 140 Cal.App.2d 536, 540-541 [295 P.2d 972]; Annot., 32 A.L.R.3d 1055.) ▮ The relinquishment by the parent of control or of the right to the child's earnings does not automatically terminate the parent's obligation of support. (6 Witkin, Summary of Cal. Law (8th ed. 1974) Parent and Child, § 130, pp. 4647-4648.)

▮ Having failed to avail himself of the proper procedure of seeking modification of the 1961 order, Husband is in no position to demand retroactive approval of his conduct. (*Spivey* v. *Furtado,* 242

---

[4]The court pointed out that Civil Code section 4700, subdivision (b), which reads in part, "When a court orders a person to make specified payments for support of a child during the child's minority, or until such child is married or otherwise emancipated, the liability of such person terminates upon the happening of such contingency," was not applicable because the 1962 support order did not refer to emancipation. (See also *Crowe* v. *Crowe,* 1 Cal.App.3d 109, 114, fn. 1 [81 Cal.Rptr. 570], stating that this statutory provision is inapplicable to a pre-1970 judgment.) Similarly here, the 1961 support order made no provision for termination of support based on emancipation.

Cal.App.2d 259, 265, 267 [51 Cal.Rptr. 362].) In *Spivey* v. *Furtado, supra,* when the children went to college the husband quit sending child support payments to the wife but sent support money directly to the children. In a suit by the wife against the husband's estate for the arrearages, the estate contended that it was entitled to credit for the amounts sent directly to the children. The court noted that the prior support order could not be modified retroactively, and held that even if credit could be given the estate in equitable circumstances, the equities did not favor granting such relief, in part because the husband had not sought modification of the order but decided for himself to disregard the terms of the order. (See also *Slevats* v. *Feustal,* 213 Cal.App.2d 113, 119 [28 Cal.Rptr. 517].)

The order appealed from is affirmed.

Kaus, P. J., and Hastings, J., concurred.