[Civ. No. 19552. Fourth Dist., Div. Two. Sept. 19, 1978.]

In re the Marriage of JUANITA RUTH and ROBERT LEE PEET.
JUANITA RUTH PEET, Appellant, v.
ROBERT LEE PEET, Respondent.

COUNSEL

George A. Sullivan for Appellant.

George H. Chula and J. K. Atzeff for Respondent.

OPINION

**GARDNER, P. J.**—In this appeal we are called upon to determine whether a paying spouse is entitled to credit on arrearages for earlier overpayments of child support made to the receiving spouse where there is no evidence of fraud, agreement by the parties or communication of the purpose of the overpayments to the receiving spouse. ██ We hold that whether the paying spouse is entitled to credit under these circumstances is a matter for the sound discretion of the trial court to be determined from the facts and circumstances of each case.

FACTS

The marriage of Robert L. and Juanita R. Peet was ended in 1959 by a judgment which imposed on husband an obligation to pay to wife $45 per month per child for the support of the parties' two minor children, Barbara and Dennis.

Husband paid all the support due from April 1959 to September 1965 plus an additional amount of $770. This figure represents an average additional payment of $5 per month per child. In September 1965, both children went to live with husband and he did not pay child support to wife while the children were in his custody.

In July 1966, Dennis returned to wife's custody while Barbara remained with husband. From July 1966 to August 1971, husband paid all the support due for Dennis plus an additional amount of $435.

In 1969, wife married a Marine who was subsequently transferred to the East Coast. In August 1971, wife and Dennis moved to Kentucky to be near her current husband. Husband failed to make any support payments to wife for Dennis after they moved to Kentucky. Dennis joined the Army in April 1974 and it is conceded that husband's duty to support him ceased at that time.

Wife obtained a writ of execution for the $1,485 plus interest in unpaid child support for Dennis from August 1971 to April 1974. Husband moved to quash the writ. The court found that husband was entitled to credit for the amount he claimed he had overpaid, a total of $1,205, and reduced the recoverable arrearages from $1,485 to $280.

Wife appeals from the order of the court partially granting husband's motion to quash her writ of execution for unpaid child support.

Wife urges that we should hold, as a matter of law, that, absent an agreement between the parties or fraud on the part of the spouse receiving support, a paying spouse is not entitled to any credits on arrearages for earlier overpayments of support made to the receiving spouse.

Husband contends that the matter should be left to the discretion of the trial court.

There appears to be no case law in California on this issue despite the fact that innumerable spouses have been paying—or not paying—child or spousal support for as long as appellate opinions have been published in this state. This is probably because those obligated to pay either child or spousal support rarely overpay.[1]

Other state courts which have addressed this issue have concluded that child support payments made in excess of those required by the decree may not be credited against future obligations under the decree. (*Loomis* v. *Loomis* (1953) 221 Ark. 743 [255 S.W.2d 671, 672-673]; *Wills* v. *Glunts* (1966) 222 Ga. 647 [151 S.E.2d 760, 761-762]; *Hains* v. *Hains* (1960) 187 Kan. 379 [357 P.2d 317, 318-319]; *Newton* v. *Newton* (1961) 202 Va. 515 [118 S.E.2d 656, 658-659]; Annot., Child Support—Right to Credit, 47 A.L.R.3d pp. 1055-1057, § 15; 24 Am.Jur.2d, Divorce and Separation, § 872, pp. 992-993.) That stance, however, may not be universal. (See *Wheeler* v. *Wheeler* (1950) 37 Wn.2d 159 [222 P.2d 400, 404].)

---

[1]Few California cases remotely approach the issue of giving a credit on arrearages. *Spivey* v. *Furtado*, 242 Cal.App.2d 259 [51 Cal.Rptr. 362], held that credit could not be allowed for substituted payments—tuition, and living expenses for a child while in college. *Spivey*, however, treated the matter as one for the discretion of the trial court and equivocated as to whether a credit for substituted payments may be allowed under some equitable circumstances. (At p. 265.) *Williams* v. *Williams*, 8 Cal.App.3d 636 [87 Cal.Rptr. 754], and *Keck* v. *Keck*, 219 Cal. 316 [26 P.2d 300], held that a husband is not entitled to set off independent debts owed him by the wife against accrued spousal or child support.

It appears that the best way to analyze this problem is to set forth the respective contentions of the receiving spouse (wife) and the paying spouse (husband).

## WIFE'S CONTENTIONS

It is the obligation of the paying spouse to pay the amount of child support specified by the decree according to its terms and the supporting spouse should not be permitted to vary these terms. To permit that spouse to unilaterally increase the amount of the monthly payments fixed by the decree at one time, discontinue them at another and require an adjustment of the differences in the future could, and most likely would, result in injury and serious disadvantage to the child.

Support is ordered in monthly payments with the expectation that there will be a steady and reliable income available to meet the ongoing needs of the child. If an overpayment is intended as a prepayment, the supporting spouse should so inform the custodial spouse so that the latter can accumulate the money and it will be available when the supporting spouse chooses to draw on his credit by suspending or reducing payments. If the custodial spouse is not so informed, the custodial spouse probably will spend the money when received to maintain a higher standard of living for the child.

The custodial spouse may assume that the additional money was a gift to the child or that the paying spouse recognized the ravages of inflation and unilaterally decided that more support was proper and necessary. The custodial parent may be influenced by the increased payment to refrain from seeking an upward modification of the amount of support. When the noncustodial spouse subsequently suspends or reduces support payments, there will be no funds to draw upon.

Based on these policy arguments, wife contends that the proper rule should be that, as a matter of law, absent an agreement between the parties or fraud on the part of the spouse receiving support, a paying spouse is not entitled to any credit for arrearages for earlier overpayments made to the receiving spouse.

## HUSBAND'S CONTENTIONS

Here, we deal only with the equitable power of the court to quash a writ of execution in whole or in part. In order to ascertain the proper

amount unpaid under the judgment, it is necessary to resolve whether credit for arrearages may be made. Where there is a showing of fraud, an agreement between the parties or communication of the purpose of overpayment to the receiving spouse that the money is an advance on future payments, there is no reason to deny the credit to the paying spouse. However, sometimes, as here, there is no fraud, agreement or communication of purpose. The proper answer is simply that whether the paying spouse should receive credit for overpayments is a matter for the sound discretion of the trial court to be determined from the facts and circumstances peculiar to each case. To adopt a rule that in all cases of overpayment of support there can be no corresponding credit against later arrearages, absent agreement or fraud, is simply too harsh and at odds with concepts generally recognized and applied in this state. There is no reason to automatically make all prearrearage overpayments a gift to the receiving spouse.

The converse of the present situation has long been recognized in this state as a matter of giving credit. Where arrearages are followed by overpayments, the excess amounts are applied against arrearages. They are not treated as gifts.

The concept of applying a credit for earlier payments to later arrearages is found daily in our trial courts. Common is a payment (assume $100) due on the first of each month but paid, hypothetically here, on January 1, January 30 and March 1. Is the paying spouse in arrears for February because there was overpayment in January? The same question arises if the payments were $200 on January 1 and $100 on March 1. Similarly, would the paying spouse be $10 in arrears if $110 is paid on January 1 and $90 paid on February 1? The answer to these simple examples is that a credit for earlier overpayments on later arrearages is recognized in this state. In none of the examples does an arrearage exist.

Much abuse could result if we were to hold in the manner advocated by wife. Assume that a husband under a child support obligation accepts overseas employment. Knowing that he will be unsettled for some time, he determines to pay ahead on his support obligation. Thus, he sends wife a child support payment representing six months' worth of support money. Because he does not know about the law's subtleties, he fails to communicate his purpose to wife. Six months later, given the rule advocated by wife herein, the husband will have paid one month's

support, made a gift of five months' worth of support, and be in arrears five months' support. Such a result simply does not make sense.

From all this, husband concludes that by leaving the discretion in the trial court in those cases where unfairness or harm would befall the receiving spouse or minor children if a credit is given, the court is vested with the power to deny a credit. In other cases the court could, as it did in this case, give credit.

## DECISION

After examining the law in other jurisdictions and analyzing the policy issues involved, we have determined that the husband has the better part of the argument. Holding that in all cases decrees for child support must be strictly complied with and credit not allowed on arrearages for overpayment previously made, absent a showing of fraud, agreement or communication, is simply too inflexible a rule. Wife's arguments make good sense for those who live on salaries or other fixed income, but what of the paying spouse whose income is uncertain, seasonal or sporadic? If that spouse, without communication, overpays during a fat season in anticipation of a lean season, the trial court should not be completely precluded from granting relief. Obviously, the better, the safer, the usual, the recommended and approved practice is to advise the receiving spouse of the reason for the overpayment. Very seldom will a situation arise in which a trial court will find that, absent at least communication, a gift was not intended by the overpayment. Absent communication or agreement, the situation is inherently suspect. "[C]redit . . . should not be permitted easily." (*Spivey* v. *Furtado, supra,* 242 Cal.App.2d 259.) We doubt that in arriving at this conclusion we have provided an open sesame for slippery paying spouses. Many may try. Few will succeed. Nevertheless, it appears to us that the necessary flexibility should be left in the trial court.

At long last, we address ourselves to the facts of this case.

■ Here, wife says there were no equitable factors sufficient to support the trial court's action in giving credit for overpayments. Not so. The most obvious factor supporting the trial court's action is that the extra dollars were paid. A second equitable factor is that there was an absence of need during the nearly three years support was not paid which is inferentially derived from the fact no action was taken by wife during the entire period to collect the support money. A third factor is that the minor was in the military service at the time the writ was sought and thus

there was no indication of harm to the child if the credit was given. There was no evidence that giving the credit would serve as a detriment to either the child or the wife.

We find no abuse of discretion in the order made.

Judgment affirmed.

Tamura, J., and McDaniel, J., concurred.