[No. A140273. First Dist., Div. Four. Oct. 27, 2016.]

In re the Marriage of DEBORAH A. and MICHAEL L. WILSON.
DEBORAH A. RUPE, Respondent, v.
MICHAEL LOUIS WILSON, Appellant;
ALAMEDA COUNTY DEPARTMENT OF CHILD SUPPORT SERVICES,
Respondent.

## COUNSEL

Michael L. Wilson, in pro. per.; Thorkelson Law and Anne E. Thorkelson for Appellant.

Deborah A. Rupe, in pro. per., for Respondent.

Kamala D. Harris, Attorney General, Julie Weng-Gutierrez, Assistant Attorney General, Linda M. Gonzalez and Ricardo Enriquez, Deputy Attorneys General, for Respondent Alameda County Department of Child Support Services.

## OPINION

**RIVERA, J.**—Michael Louis Wilson (Father) appeals an order of the family court denying his request for an equitable set-aside of his child support arrearages. In the published portion of this opinion, we shall remand the matter to allow the family court to exercise its discretion to determine whether it would be inequitable to allow respondent Deborah A. Rupe (Mother) to enforce the child support order for the period during which the couple's daughter (Minor) was living in the home of Father's parents (Grandparents).

## I. BACKGROUND

### A. *Prior Proceedings*

Father married Mother in 1978. Minor was born in 1979. In 1981, Mother filed a petition for dissolution of the marriage. Father's default was entered, and an interlocutory judgment of dissolution was entered later that year.[1] The family court granted custody of Minor to Mother and ordered Father to pay $200 per month in child support. A final judgment of dissolution was entered in 1984.

In 1985, the Alameda County District Attorney filed a declaration alleging that Father owed $7,550 in unpaid child support. Father appeared, in person and with counsel, at a June 10, 1985 hearing at which, by stipulation, the family court ordered him to make payments of $200 per month through withholdings from his wages. After an evidentiary hearing in July 1985, at which Father was again present and represented by counsel, the family court adjudged him $7,006.19 in child support arrears from November 1981 through June 1985 and ordered him to pay $100 per month in arrears, to be withheld from his wages.

In 1987, Father sought to have the child support payments made to Grandparents during the time they cared for Minor full time. By stipulation, the parties agreed that support would be reduced to $100 a month while Minor was living with Grandparents, payable to them, and in October 1987, the court so ordered. The order also provided that if Minor returned to

---

[1] The record contains a declaration of personal service of the summons and petition and other documents by a professional process server on Father, on July 20, 1981, at an address in Oakland. The request to enter default includes a proof of service by mail on Father, on September 14, 1981, at both the Oakland address and an address in Carson City, Nevada. We grant Father's motion to augment the record, dated January 10, 2015.

Mother, ongoing child support would once again be $200 a month, and that upon that increase in child support payments, the arrearages payments would be reduced to $50 a month. It appears that this order was never modified and Minor lived with Grandparents for the rest of her childhood.

In 2000, upon Father's motion, the parties entered into a stipulation that Father should receive credit against the arrearages for the child support payments he made to Grandparents from October 1987 onward. It appears that the reason for the motion was that Grandparents had been forwarding to Mother the child support payments Father had been making to them.

## B. Current Proceedings

On September 21, 2012, Father filed a request for an order, seeking, as relevant here, stay of enforcement of the child support arrears on the ground he had overpaid Mother; equitable set-aside of the child support arrearages on the ground Minor had lived with Grandparents since she was two years old; credit for child support charged during the time Minor lived with Grandparents; and set-aside of interest on arrearages. The family court ordered the Alameda County Department of Child Support Services (the Department) to prepare an account history reflecting the prior credits that were ordered and set a long cause hearing.[2]

At the hearing on the matter, Father testified that between the time the child support order took effect in October 1981 and the date Minor turned 18, Minor lived with Mother for two 10-month periods and lived with Grandparents the rest of the time. Father testified he moved to Carson City, Nevada, in 1981 and lived with Grandparents and Minor for about two years. Between 1981 and 1987, Father made payments to Grandparents, "$100 here, $100 there." Mother did not provide any money to Grandparents. Father also testified that when he was paying child support to Grandparents, they would give the money to Mother because they were afraid Mother would remove Minor from their care if they did not do so.

Father testified that he did not recall being served with the divorce papers.

Deborah Wilson (Wilson), who was married to Father after his divorce from Mother and remained married to him until sometime in the 1990's,

---

[2] In 2000, the Legislature transferred responsibility for establishing and enforcing child support obligations from county district attorneys to newly established departments of child support services. (Fam. Code, § 17304.) All undesignated statutory references are to the Family Code.

testified that with the exception of one 10-month period and one 4-month period, Minor lived with Grandparents between 1981 and 1997. The periods Minor lived with Mother were from September 1984 to June 1985, and from September 1985 to January 1986.[3] During the time Minor lived with Grandparents, Mother did not provide any financial support for Minor. Father contributed about $200 a month from 1981 to 1984, and about $400 a month between January 1986 and September 1987. Until 1995, Grandparents gave Mother all of their child support checks because they were afraid Mother would remove Minor from their care.

Wilson testified that she and Father began living together in Carson City in 1981, and that they lived with Grandparents for about a month before they got their own apartment in the same complex. Minor remained with Grandparents rather than living with Father and Wilson because Grandparents were afraid Mother would take Minor if she lived with Wilson and her children. Father and Wilson moved away from Carson City in 1982 or 1983.

The trial court denied Father's request for equitable set-aside or stay of enforcement of the child support arrearages for the period Minor lived with Grandparents, based upon its conclusion that Father did not support Minor in his home and there was insufficient evidence of the extent to which he supported her in Grandparents' home. The court also denied the request for credit for the times that Minor lived with Grandparents. The court ordered that, pursuant to section 155, interest would accrue against the child support arrears from the time each original support payment was due, rather than from the time Father failed to make the payments required under the 1985 and 1987 orders that he repay arrearages.

The court entered its "Findings and Order After Hearing" on August 8, 2013. On September 4, 2013, Father filed a motion for reconsideration based on the assertedly new or different facts that (1) Father had additional evidence to support his contention that Minor lived with Grandparents during most of her childhood and (2) Father was never served with the petition for dissolution and request for child support. (Code Civ. Proc., § 1008, subd. (a).) The family court denied the motion, concluding both that it was untimely and that there was no new information or other basis for reconsideration.

---

[3] The court sustained a hearsay objection to Wilson's reliance on a document she had seen granting Grandparents guardianship as of January 5, 1986; Wilson then testified without objection that she knew the dates Minor lived with Mother of her own personal knowledge.

## II.  DISCUSSION

A., B.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

C.  *Equitable Stay of Enforcement*

Father contends the family court misunderstood the scope of its discretion and erred in declining to use its equitable powers to stay enforcement of the child support arrears that accrued during the periods that Minor lived with Grandparents.

■   Section 3651, subdivision (c)(1) provides that, with exceptions not relevant here, "a support order may not be modified or terminated as to an amount that accrued before the date of the filing of the notice of motion or order to show cause to modify or terminate." However, as Father points out, it is within the court's equitable power to deny *enforcement* of the arrears on equitable grounds under certain circumstances. (*Jackson v. Jackson* (1975) 51 Cal.App.3d 363, 366–367 [124 Cal.Rptr. 101] (*Jackson*).)

In the cases the parties cite, in which the *Jackson* rule has been applied to deny enforcement of child support arrears, the parent who was obligated to pay child support had actually cared for the child in his or her own home. In *Jackson*, the father had been ordered to pay child support to the mother. After the child began living with the father, with the mother's consent, the father ceased paying child support. (*Jackson, supra*, 51 Cal.App.3d at p. 365.) The mother later obtained a writ of execution on child support arrears for the time the child was living with the father, and the father sought an order quashing the writ of execution. (*Ibid.*) The trial court concluded the father's request was an attempt to modify a prior child support order and denied it. (*Id.* at pp. 365–366.) The appellate court vacated the order and remanded the matter to the trial court for reconsideration; it noted that the father had provided a home for the child and in doing so had expended amounts well in excess of the court-ordered $750 a month. The court concluded that, in the circumstances, the trial court would have been well within its discretion in quashing the writ of execution or permitting only partial enforcement "on the basis that [the father] had directly *discharged his obligation* or on the basis of equitable considerations." (*Id.* at p. 368, italics added.) In *In re Marriage of Trainotti* (1989) 212 Cal.App.3d 1072, 1075 [261 Cal.Rptr. 36], on similar facts, the appellate court concluded the trial court "should have considered whether the debtor [father] had *satisfied or otherwise discharged the obligation* imposed

---

*See footnote, *ante*, page 1011.

by the original order. [Citations.] Such consideration does not violate the prohibition against retroactive modification of the support award. [Citation.]" (Italics added.) The court went on, "We think it clear that the trial court erred by refusing to consider whether appellant had satisfied his obligation by furnishing [the child], with the approval of his former wife, a home and support that was equal to or in excess of the court-ordered amount." (*Id.* at pp. 1075–1076; see *In re Marriage of Okum* (1987) 195 Cal.App.3d 176, 182 [240 Cal.Rptr. 458] [trial court had discretion to permit only partial enforcement of child support arrears against parent who had sole physical custody during period in question]; *Helgestad v. Vargas* (2014) 231 Cal.App.4th 719, 733, 735 [180 Cal.Rptr.3d 318] [equitable child support credit may be given during period couple resumed living together in attempt at reconciliation; to have benefit of these "*Jackson*" credits, cohabiting payor spouse has burden to show "the provision of actual in-kind or in-the-home support"].)

■ Father contends that the family court's discretion to deny enforcement of a support order is not limited to circumstances in which the obligor parent cares for a child in his or her own home, but is broad enough to embrace a situation in which *neither* parent is raising the child at home. We believe that, in the peculiar circumstances of this case, Father's position has merit.

We recognize that the *Jackson* line of cases is based on the theory that a parent can discharge the child support obligation by caring for the child at the parent's own expense. (See *In re Marriage of Beilock* (1978) 81 Cal.App.3d 713, 732 [146 Cal.Rptr. 675] [explaining that the motion in *Jackson* "did not involve an effort to modify retroactively a judgment for support. It was an attempt to show that the obligation had been discharged"].) The situation here differs from those cases in that Father did not provide for Minor in his own home. However, we are not persuaded that this fact causes it to fall outside the trial court's equitable power to prevent enforcement of some or all of the child support arrears.

There is undisputed evidence that during most of the time between 1981 and 1987, Father's own parents cared for Minor in their home and Father contributed to Minor's support by providing money to Grandparents. It is reasonable to infer that Grandparents cared for Minor on Father's behalf. Had Minor lived with Mother, and had Grandparents paid Father's monetary obligation to Mother on his behalf, there is no question the obligation would be treated as discharged. We see no reason to treat Grandparents' in-kind discharge of the obligation differently.

In addition, because child support had been ordered in the amount of $200, but the parties stipulated that Father would pay Grandparents only $100, it is reasonable to infer that Grandparents had been providing at least $100, if not

$200 worth of care and support to Minor during the times she lived with them. Accordingly, this record does not foreclose a conclusion that Father's obligation to support Minor during the relevant period was discharged, in whole or in part, through Grandparents' care of Minor on his behalf and through the payments he made to them during the period for which Mother seeks arrears.

Moreover, there is no evidence in the record before us that, during the periods between 1981 and 1987, when Minor lived with Grandparents, Mother provided any support for Minor.[4] If the facts as presented by Father are true—that is, if Mother is seeking child support arrears for times that she neither cared for Minor nor provided for her financially—enforcement of the arrears might well be nothing more than a windfall to Mother, bearing no relation to any support or care Minor actually received during her childhood.

In reaching this conclusion, we do not ignore that the trial court's denial of Father's request for an equitable stay of enforcement of the child support arrears rested in part on Father's delay in raising the issue. This delay, the court indicated, made it difficult to determine the extent to which Minor was supported in Grandparents' home and implicated the defense of laches. However, the family court relied primarily on the theory that Father was not entitled to equitable relief unless he supported Minor in his own home. We have concluded that the location of Minor's care is not dispositive.

Accordingly, we shall remand the matter to the family court to consider whether, in the unusual circumstances of this case, it would be inequitable to allow Mother to enforce some or all of the child support order to the extent it applies to periods that Minor lived with Grandparents.[5] In carrying out this inquiry, the court should take into account Grandparents' provision of care for Minor and the extent to which this can be considered to have discharged Father's obligation; the extent of actual financial support provided to Grandparents by Father; the extent of support, if any, provided by Mother; the effect, if any, of the delay in bringing this request for equitable relief; and any other relevant factors.[6]

---

[4] Mother was present when Father and Wilson testified that she provided no support for Minor during these times, and she did not offer any contrary evidence.

[5] It is undisputed that Mother did not receive public assistance on behalf of Minor and that the Department is seeking to collect child support arrearages owed to Mother. This case does not raise any issue regarding estoppel against a governmental agency seeking recoupment of governmental payments.

[6] Because we do not know what result the family court will reach on remand, we shall address the remainder of Father's contentions in the unpublished portion of this opinion.

D., E.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III. DISPOSITION

The August 8, 2013 order is reversed. The matter is remanded to the family court for further proceedings consistent with this opinion. The parties shall bear their own costs on appeal.

Reardon, Acting P. J., and Streeter, J., concurred.

A petition for a rehearing was denied November 23, 2016, and the opinion was modified to read as printed above.

---

[*]See footnote, *ante*, page 1011.