Filed 8/25/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re the Marriage of ANA and CARL SIVA. | |
| ANA MARIA PALOMARIA SIVA,<br><br>        Appellant,<br><br>v.<br><br>CARL RALPH SIVA,<br><br>        Respondent. | A157554<br><br>(Alameda County<br>Super. Ct. No. HF17869391) |

This appeal arises from an order awarding a credit under *Jackson v. Jackson* (1975) 51 Cal.App.3d 363 (*Jackson*)[1] for child support that respondent paid to petitioner for approximately 10 months while the parties' daughter lived full-time with respondent. Petitioner argues that the trial court impermissibly modified the parties' child support order retroactively. She also challenges the denial of her request for attorney fees and costs as

---

[1] Under *Jackson*, a court has discretion to give credits against child support arrearages where the obligor has satisfied his or her child support obligation by taking physical custody of the supported child. (*Jackson*, *supra*, 51 Cal.App.3d at p. 368.) Courts now refer to these types of credits as "*Jackson* credits." (*Helgestad v. Vargas* (2014) 231 Cal.App.4th 719, 721–722.)

sanctions under Family Code[2] section 271. We find that the court had discretion to allow a credit for respondent's double-satisfaction of his child support obligations, and the court did not err by denying sanctions. We affirm.

## BACKGROUND

Petitioner petitioned to dissolve her marriage to respondent in July 2017. The parties had one teenage child, S.S. Contentious dissolution proceedings ensued[3] during which S.S. experienced serious issues. At respondent's request, the court appointed counsel for S.S.

In January 2018, the trial court incorporated the parties' binding Marital Settlement Agreement (MSA) into a judgment. The judgment provided for joint legal and physical custody of S.S., with mother having a 72 percent and father a 28 percent timeshare. S.S. was able to spend time at either parent's residence at her discretion, and respondent was ordered to pay $1,700 in monthly child support.

On April 10, 2018, S.S. left petitioner's home. S.S. lived full-time with respondent thereafter. In May 2018, petitioner filed an income withholding order for child support.

In July 2018, the trial court held a custody review hearing. Respondent requested that the court grant him full physical custody of S.S., allowing weekly visits with petitioner at S.S.'s discretion; he further asked the court to order reunification therapy to repair the mother-daughter relationship. In addition, he requested appointment of a special master to make

---

[2] All further statutory references are to the Family Code unless otherwise specified.

[3] The parties engaged in extensive litigation in the dissolution and related proceedings, but we do not discuss facts relating to those proceedings as they are unnecessary to the resolution of this appeal.

determinations regarding parental decision-making, such as whether S.S. could work. In her statement to the court, petitioner told the court that S.S. had serious problems requiring intervention, requested that S.S. be prohibited from obtaining a driver's license or working, and sought to require S.S. to return to petitioner's care. At the hearing, counsel for S.S. and respondent reported that S.S. was doing well living with respondent. Among other things, the court ordered petitioner and S.S. to start reunification therapy, authorized S.S. to continue working, denied petitioner's requests to require S.S. to return to her physical custody and to prohibit S.S. from obtaining a learning permit or driver's license, and, because petitioner requested a long cause hearing, the court set a custody trial for January 2019.

To allow S.S. and petitioner to participate in reunification therapy, the parties stipulated to a continuance of the custody trial to June 2019. At a review hearing in January 2019, respondent asked the court to vacate the custody trial date and endorse his full-time physical custody of S.S. because reunification therapy had been unsuccessful, or, in the alternative, to order a full custody evaluation. Petitioner urged the court to set a custody trial date. The court continued the custody trial date, ordered a full custody evaluation, and set a June 2019 hearing date for the receipt of the evaluation.

On February 27, 2019, respondent filed a request for an order modifying child support, ordering *Jackson* credits and reimbursements for expenditures related to S.S., and awarding attorney fees and costs. He requested that he be permitted to cease paying child support, and that petitioner be ordered to pay him (1) $812 in monthly child support retroactive to the filing of his request for modification, and (2) $18,133 in *Jackson* credits for the child support he paid from April 11, 2018 (when S.S. began living with

3

him) to the date of his February 27, 2019 request for orders. Respondent explained that he had not filed his request earlier because he was focused on stabilizing S.S. Respondent sought sanctions under section 271. Petitioner opposed and also sought sanctions under section 271.

After hearing argument and taking the matter under submission, the trial court granted respondent's request to modify child support. Because petitioner had been laid off around the time of the March 2019 hearing, the court set a future review hearing, and, in the interim, ordered that neither party would pay child support. Regarding the *Jackson* credit, the court found that, "[w]hile not a parallel set of facts, the same reasoning applies in this case as it does in *Jackson v. Jackson* 51 Cal.App.3d 363 and its progeny," and "[g]iven the equitable considerations," the trial court ordered petitioner to pay respondent $18,133 in $1,000 monthly installments until paid in full. The trial court denied each party's request for sanctions.[4]

## DISCUSSION

### A. The "*Jackson*" Credit

Child support orders and orders the trial court deems necessary to enforce its child support orders are generally reviewed for abuse of discretion. (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 282; § 290[5].) But California's child support statutes and the purposes of the law regarding

---

[4] The trial court granted respondent's requests for reimbursement for health care, reunification therapy, and extra-curricular expenditures related to S.S. Appellant challenges only the trial court's order with respect to the *Jackson* credit and sanctions, so the reimbursements and the court's order modifying child support are not at issue in this appeal.

[5] Section 290 provides, "A judgment or order made or entered pursuant to this code may be enforced by the court by execution, the appointment of a receiver, or contempt, or by any other order as the court in its discretion determines from time to time to be necessary."

child support limit the trial court's exercise of discretion. (*Cheriton*, p. 283.) Here, where there are no facts in dispute, we review de novo the legal questions of whether the trial court had discretion to give a *Jackson* credit and whether it acted in excess of its jurisdiction and in violation of child support statutes. (See *S.C. v. G.S.* (2019) 38 Cal.App.5th 591, 598 (*S.C.*).)

1. **The Trial Court's Order Did Not Violate the Statutory Prohibition on Retroactive Modification of Child Support**

Petitioner first argues that the trial court acted in excess of its jurisdiction and violated statutory prohibitions by retroactively modifying a child support order for the roughly ten months that predated respondent's request for modification. She invokes a number of statutes prohibiting retroactive modification. "An order modifying or terminating a support order may be made retroactive to the date of the filing of the notice of motion or order to show cause to modify or terminate, or to any subsequent date[.]" (§ 3653, subd. (a).) "[A] support order may not be modified or terminated as to an amount that accrued before the date of the filing of the notice of motion or order to show cause to modify or terminate." (§ 3651, subd. (c)(1).)[6] Section 3603 states, "An order made pursuant to this chapter may be modified or terminated at any time except as to an amount that accrued before the date of the filing of the notice of motion or order to show cause to modify or terminate." And section 3692 provides, "Notwithstanding any other provision of this article, or any other law, a support order may not be set aside simply because the court finds that it was inequitable when made, nor simply because subsequent circumstances caused the support ordered to become excessive or inadequate." We do not believe the trial court's order

_____

[6] Sections 3651 and 3653 contain some exceptions not relevant here. (§§ 3651, subds. (b), (c)(1)–(2); 3653, subd. (a).)

5

recognizing that respondent doubly satisfied his child support obligation—by paying child support while maintaining full physical custody of S.S.—violated these statutes.

Starting with *Jackson*, California courts have recognized that a judicial determination that an obligor discharged his or her child support obligation for the period during which the supported child lived with the obligor does not run afoul of the statutory prohibition on retroactive modification. In *Jackson*, the parties divorced, the mother received custody of their daughter, and the mother subsequently let the daughter live with the father. When the mother obtained a writ of execution for child support arrearages for the time when the daughter lived with the father, the father moved to quash the writ or, alternatively, to be reimbursed for money he spent on his daughter. (*Jackson*, *supra*, 51 Cal.App.3d at p. 365.) The trial court found the father was attempting to retroactively modify a child support order and denied his request. (*Id.* at pp. 365–366.) The appellate court disagreed, reasoning that all child support orders are an exercise of the trial court's "equitable power and are designed to compel satisfaction of the child support obligation" which is owed to the child, not the obligee parent. (*Id.* at pp. 366–367.) Where the father provided the child a home and expended amounts in excess of the court-ordered child support, the trial court would have been well within its discretion in quashing the writ or permitting partial enforcement "on the basis that [the father] had directly discharged his obligation or on the basis of equitable considerations." (*Id.* at pp. 368–369.)

In *In re Marriage of Trainotti* (1989) 212 Cal.App.3d 1072, 1075 (*Trainotti*), the appellate court reversed the trial court's finding that the statutory ban on retroactive child support modification prevented it from considering whether to grant the father credit for child support for the time

6

during which his child lived with him.[7]  The mother had been granted custody of the parties' son, but he moved in with the father.  The father attempted to get the mother to stipulate to entry of an order changing custody and child support on several occasions, but she refused.  (*Id.* at p. 1073.)  After the father sought modification of the custody and support orders and subsequently attempted to get the mother to stipulate to the change of custody and support, the mother initiated a contempt proceeding for unpaid child support.  The parties ultimately stipulated to the custody change and dismissed the contempt proceeding; however, they asked the trial court to determine arrearages.  For the time period during which the child lived with his father, the trial court "should have considered whether the debtor had satisfied or otherwise discharged the obligation imposed by the original order.  [Citations]."  (*Id.* at p. 1075.)  "Such consideration does not violate the prohibition against retroactive modification of the support award."  (*Ibid.*; *In re Marriage of Okum* (1987) 195 Cal.App.3d 176, 182 [following *Jackson* and finding the trial court had discretion to allow credits against arrearages as to parent who had sole physical custody of one of parties' two children during period in question].)

More recently, in *Helgestad v. Vargas* (2014) 231 Cal.App.4th 719 (*Helgestad*), the appellate court held that *Jackson* credits were available in a paternity action for the period during which the father and mother lived together and attempted reconciliation if the obligor established the provision of actual in-kind or in-the-home support.  The court reviewed the equitable

---

[7] At the time, this prohibition was set forth in former Civil Code section 4700, subdivision (a)(1), which provided in pertinent part:  "Any order for child support may be modified or revoked as the court may deem necessary, except as to any amount that may have accrued prior to the date of the filing of the notice of motion or order to show cause to modify or revoke."

theory supporting the availability of credits in *Jackson* and its progeny, as well as theories underlying out-of-state decisions allowing and disallowing similar credits. (*Id.* at pp. 723–732.) The court endorsed the availability of a credit based on equitable concerns and rejected what it deemed the " 'pure' anticredit case[s]" from other states that categorically refused credit based on statutes prohibiting retroactive modification. (*Id.* at pp. 730–733.) "[M]echanical application of the no-retroactive-modification rule seems to us inconsistent with the entire *Jackson* line. 'The trial court may determine that nothing is owed for child support amounts that accrued during the period the supported child was living with the obligor parent. This does not affect an improper "retroactive modification" because the arrearages are deemed satisfied by the obligor's direct provision for the child's needs during the applicable period of time.' [Citations]" (*Id.* at p. 733, italics omitted; *In re Marriage of Wilson* (2016) 4 Cal.App.5th 1011, 1017 (*Wilson*) [recognizing *Jackson*'s theory "that a parent can discharge the child support obligation by caring for the child at the parent's own expense" and remanding for the trial court to consider a setoff against arrearages for the period during which the child lived with grandparents and the father provided support].)

Applying the theory behind *Jackson* and its progeny here, respondent in essence satisfied his child support obligation twice for the time period commencing when S.S. began living with him full-time and ending when he filed his request for child support modification. Recognition of this double satisfaction did not violate prohibitions on retroactive termination or modification of child support orders under sections 3651, 3653, or 3603, and, for the same reasons, did not impermissibly set aside a child support order under section 3692. (*Trainotti, supra,* 212 Cal.App.3d at p. 1075; *Helgestad, supra,* 231 Cal.App.4th at p. 733.)

8

The cases petitioner cites in support of her retroactive modification argument are distinguishable. In none of those cases did the obligor take custody of his child and fulfill a support obligation. Rather, in each, the obligor sought to eliminate some part of his obligation and accrued child support arrearages. (*Stover v. Bruntz* (2017) 12 Cal.App.5th 19, 25–27 [reversing an order subtracting $441 monthly from child support arrearages for the time the obligee did not have the supported child in licensed child care]; *In re Marriage of Sabine & Toshio M.* (2007) 153 Cal.App.4th 1203, 1217 [finding unenforceable the parties' postdissolution agreement waiving thousands of dollars of undisputed accrued child support arrearages]; *In re Marriage of Gong & Kwong* (2008) 163 Cal.App.4th 510, 518 [rejecting the obligor's interpretation of an order determining arrearages that would eliminate 9 months of accrued child support and interest and dismissing the appeal as frivolous]; *County of Santa Clara v. Wilson* (2003) 111 Cal.App.4th 1324, 1325–1326 [reversing trial court's order eliminating months of child support arrearages for the time the obligor was imprisoned]; *S.C.*, *supra*, 38 Cal.App.5th at pp. 593–594, 601 [finding same and contrasting *Jackson* and its progeny where the parent provided support to the child during the relevant period by caring for him or her][8].)

### 2. The Trial Court Had Discretion to Give a *Jackson* Credit

Petitioner next argues that *Jackson* credits could not be given in this case because they are only available in collection proceedings such as those in *Jackson* where the obligee obtained a writ of execution to recover child support arrearages. The parties have not cited, nor have we found, a case

---

[8] Appellant concedes that respondent had 100 percent physical custody of S.S. from April 10, 2018 through the date of his February 2019 request for orders, and she has never contested respondent's statement that he provided actual in-home support to S.S.

allowing a *Jackson* credit in circumstances identical to those before us. Nevertheless, examination of pertinent authority leads us to conclude that the trial court's discretion to recognize *Jackson* credits is not confined to proceedings where the obligee seeks to collect on arrearages.

Courts have recognized the availability of *Jackson* and other child support credits outside of collection proceedings, relying on their inherent authority to determine what is owed under their support orders and the manner in which these orders are enforced. (See *Trainotti*, *supra*, 212 Cal.App.3d at p. 1075 [recognizing availability of *Jackson* credits in an action denominated as a "modification proceeding" where the parties sought a determination of arrearages and "the court's jurisdiction was invoked to enforce the terms of the original child support order"]; *Helgestad*, *supra*, 231 Cal.App.4th at p. 722 [recognized the availability of *Jackson* credits in response to the obligor's motion to determine arrearages]; *County of Shasta v. Smith* (1995) 38 Cal.App.4th 329, 334–335 (*Smith*) [even absent an enforcement proceeding, the court has inherent authority to determine the amount of its judgment, so it could decide the obligor's motion to determine arrearages, including his entitlement to credits from the alleged discharge of his support obligation][9].)

There appear to be few cases addressing requests for child support credits in the absence of arrearages, but we have found two that involve requests for a credit in the form of a refund or future offset. In *In re Marriage of Starr* (2010) 189 Cal.App.4th 277, 290–291, the obligor filed a request seeking modification of child support and a refund of overpaid child

---

[9] In *Smith*, the obligor claimed he had discharged his child support obligations based on wage garnishments with which his employer had allegedly absconded. (*Smith*, *supra*, 38 Cal.App.4th at p. 332.)

support after discovering that the parties' stipulated child support formula was based on the erroneous assumption that the parties had four children, when, in fact, they had two. The trial court first modified the support order to reflect support for the parties' two children, but, after holding a trial on the refund issue, it found the modified child support was inadequate, raised the father's support, and denied a refund. (*Id.* at p. 290.) The appellate court affirmed, finding that the trial court had discretion to grant or deny the request for a refund based on its equitable discretion to provide a credit against arrearages for overpayment of child support.[10] (*Id. at* pp. 290–291 [following *In re Marriage of Peet* (1978) 84 Cal.App.3d 974, 977–979 (*Peet*)].)

More recently, *Y.H. v. M.H.* (2018) 25 Cal.App.5th 300 (*Y.H.*), recognized the trial court's ability to provide a credit for overpaid child support, in the form of a refund or future offset at the trial court's discretion, despite the absence of arrearages. (*Id.* at p. 302 & fn. 2.) In *Y.H.,* the father paid full child support for six years while his application for social security disability (SSDI) benefits was pending; when the benefits were approved, the mother received a lump sum payment for past derivative SSDI benefits on behalf of the parties' daughter. The father then filed a request for an order

---

[10] The dissent characterizes *Starr's* endorsement of the trial court's discretion to order a refund of overpaid child support as little more than dicta. (Dissent, p. 7.) We disagree. *Starr*'s holding with respect to this issue has two components. First, the appellate court found that the trial court had discretion to decide the request for a refund under *Peet, supra,* 84 Cal.App.3d at pp. 977–979. (*Starr, supra,* 189 Cal.App.4th at p. 290.) Describing *Peet,* the court stated, "*Peet* involved a spouse's claim for reimbursement of voluntary overpayments [of child support], which the trial court granted. The Court of Appeal affirmed, holding that the trial court had discretion in such matters. We hold that *Peet* is applicable here." (*Ibid.*) Second, the court held that the trial court did not abuse its discretion in the circumstances of the case by declining the father's request for reimbursement. (*Id.* at p. 291.)

11

granting a credit for overpaid child support. (*Ibid.*)  The trial court found the SSDI lump sum payment had to be credited against the father's child support obligation under section 4504, subdivision (b)[11], and it ordered the benefits to be retroactively applied first against the father's obligation for the months covered by the lump sum payment before applying the father's child support payments; any payment exceeding the child support obligation amount "would be subject to an offset or a refund." (*Id.* at p. 304.)

The appellate court affirmed, holding that section 4504, subdivision (b) required the derivative SSDI benefits received by obligor's child to be credited against the obligor's child support obligation, although the statute did not address how to effect a credit where no arrearages existed. (*Y.H.*, *supra*, 25 Cal.App.5th at pp. 305–307.)  It further observed that not allowing a retroactive credit would discourage the obligor from making support payments while seeking benefits and inequitably require him to overpay child support once the benefits materialized. (*Id.* at pp. 310–311 and fn. 8.)  The appellate court then approved the trial court's method of implementing the credit: "The [trial] court met the statutory mandate by ordering retroactive child support credit for the months covered by the lump-sum payment for past-due benefits.  This fell within its broad enforcement power to determine

---

[11] This subdivision provides, "If the court has ordered a noncustodial parent to pay for the support of a child, payments for the support of the child made by the federal government pursuant to the Social Security Act or Railroad Retirement Act, or by the Department of Veterans Affairs because of the retirement or disability of the noncustodial parent and received by the custodial parent or other child support obligee shall be credited toward the amount ordered by the court to be paid by the noncustodial parent for support of the child unless the payments made by the federal government were taken into consideration by the court in determining the amount of support to be paid.  Any payments shall be credited in the order set forth in Section 695.221 of the Code of Civil Procedure."

the manner in which its child support order is enforced.  (§ 290.)  '[T]he trial court may give credit for past overpayment (*In re Marriage of Peet*, [*supra*,] 84 Cal.App.3d [at pp.] 980–981)' . . . 'or take into consideration "whether the debtor had satisfied or otherwise discharged the obligation imposed by the original order." '  (*Keith G. v. Suzanne H.* (1998) 62 Cal.App.4th 853, 858–859.)  That is precisely what the court did."  (*Y.H.*, at p. 307.)

Turning to the case at hand, the trial court's order reflects a recognition that respondent doubly satisfied his child support obligation by caring for S.S. when she lived with him full-time and through his support payments.  Effectively, he double paid.  Once the court recognized the double-satisfaction, similar to *Y.H.*, the court's election to give a credit in the form of a refund where no arrearages existed "fell within its broad enforcement power to determine the manner in which its child support order is enforced."  (*Y.H.*, *supra*, 25 Cal.App.5th at p. 307.)  We acknowledge that the statute as interpreted in *Y.H.* required the SSDI benefits to be credited against the obligor's child support obligation whereas *Jackson* credits are discretionary.  However, as we previously found herein, the child support statutes on which petitioner relies do not prohibit a credit.

"Family law court is a court of equity."  (*In re Marriage of Calcaterra & Badakhsh* (2005) 132 Cal.App.4th 28, 38.)  Although a court cannot transgress statutory mandates, family law proceedings " 'are equitable proceedings in which the court must have the ability to exercise discretion to achieve fairness and equity.' "  (*In re Marriage of Boswell* (2014) 225 Cal.App.4th 1172, 1175.)  Equity would not be served by holding that the trial court lacked discretion to give a credit in this case when it indisputably could have exercised such discretion under *Jackson* had respondent requested a determination of arrearages after not paying the court-ordered

13

child support.  Such a ruling would effectively punish respondent for complying with the child support order while simultaneously providing a home to S.S.

Our dissenting colleague believes that the trial court's order undermines the "equitable role that *Jackson* credits normally fulfill." (Dissent, p. 6.)  The dissent states that, although an obligee parent is entitled to seek enforcement of unpaid child support when the obligor parent takes custody of the child, where the obligee parent agrees that non-payment is equitable under the circumstances and declines to seek enforcement until many months have passed, *Jackson* credits are available to the obligor to defeat such a "post hoc 'gotcha' " motion.  (Dissent, p. 6, citing *Helgestad*, *supra*, 231 Cal.App.4th at p. 733.)  In contrast, when the obligor parent pays child support while providing in-home support and then requests a court-ordered refund, the dissent characterizes the obligor's request as a "post hoc 'gotcha' " because the obligee had no reason to believe she was not entitled to spend the child support that "was lawfully hers."  (Dissent, pp. 6–7.)

We disagree.  The dissent states that money paid pursuant to a child support order is lawfully that of the obligee parent, implying that the support obligation runs to the obligee parent.  (Dissent, pp. 6–7.)  But it is well established that the support obligation is owed to the *child*, not to the parent identified in the support order as the recipient of child support payments. (*Jackson*, *supra*, 51 Cal.App.3d at p. 367; *Williams v. Williams* (1970) 8 Cal.App.3d 636, 640.)  "In essence, the parent, to whom such support is paid, is but a mere conduit for the disbursement of that support."  (*Williams,* at p. 640.)  When a supported child moves completely out of the obligee parent's home to live with the obligor parent and the obligor provides in-home child support, the obligee parent cannot be said to be unaware that he

14

or she is no longer acting as a conduit for the disbursement of child support to a child who no longer lives with him or her.

Our dissenting colleague also implicitly equates a refund of support with a reduction in the amount of support the trial court previously ordered. (Dissent, pp. 1–2.) They are not the same. The court may never reduce support payable prior to the date the obligor files a motion requesting a reduction. But as *Jackson* and its progeny recognized, acknowledging the obligor parent's satisfaction of the support obligation by providing in-home support for the supported child does not reduce, enlarge, or modify the support obligation. Where, as here, the support obligation has been satisfied twice, a refund may or may not be ordered depending on the circumstances.

Although we uphold the trial court's order based on the record in this case, nothing in this opinion should be construed to *require* a court to award a *Jackson* credit in similar circumstances. The determination of whether to give a *Jackson* credit is left to the sound discretion of the trial judge, who must weigh the circumstances and the equities in each case. (See *Wilson*, *supra*, 4 Cal.App.5th at p. 1018 [directing the trial court to consider all relevant factors when exercising its discretion to determine whether to award a *Jackson* credit].) It is possible that a trial court may determine that the equities weigh against recognizing a full or partial credit if, for example, the obligee establishes that he or she paid certain fixed child support costs, the determination of when a child was in the custody of the obligor parent becomes unduly complicated or protracted, or the granting of a credit is not in the best interests of the child. The court may also consider factors such as the length and explanation for the obligor parent's delay in requesting a refund, the obligee parent's use of the payments (i.e., whether or not for the benefit of the minor), and the relative hardships of requiring or refusing a

15

refund.  We are not called upon to decide whether the trial court abused its discretion in this case because petitioner does not argue that, if the trial court had discretion to award a *Jackson* credit, it abused its discretion in doing so.

B. Attorney Fees and Costs

Petitioner seeks to overturn the trial court's order denying what she contends were requests for need-based attorney fees and costs under section 2030 and sanctions under section 271.  Under an abuse of discretion standard, where we construe all the evidence and indulge all reasonable inferences in support of the trial court's order, we find no error.  (See *Marriage of Fong* (2011) 193 Cal.App.4th 278, 291 [a section 271 order is reviewed for abuse of discretion]; *In re Marriage of M.A. & M.A.* (2015) 234 Cal.App.4th 894, 896 [same as to orders under section 2030].)

Under sections 2030 and 2032, the trial court may make a need-based award of attorney fees and costs where the making of the award and its amount are just and reasonable given the relative circumstances of the parties.  (§§ 2030, 2032, subd. (a).)  But petitioner did not request need-based attorney fees and costs below, and we decline to consider her request for the first time on appeal.  (*Sea & Sage Audubon Society, Inc. v. Planning Com.* (1983) 34 Cal.3d 412, 417 [issues not raised in the trial court cannot be raised for the first time on appeal].)

Under section 271, a "court may base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys."  Petitioner seeks to overturn the court's denial of sanctions because she is not as financially secure as respondent and because respondent filed a motion requesting a *Jackson* credit.  However, the

financial need of the party seeking sanctions is irrelevant to a section 271 request.  (Hogoboom et al., Cal. Practice Guide: Family Law (The Rutter Group 2019) ¶ 14:235.)  Further, while there was no authority applying *Jackson* in circumstances identical to this case, the court did not abuse its discretion in refusing the sanctions request, as respondent's motion had a sound factual and legal basis.  Finally, petitioner does not support her argument with citations to the record or attempt to establish how, apart from filing the request for a credit, respondent frustrated the promotion of settlement or increased litigation costs.

## DISPOSITION

The trial court's order is affirmed.

_____
BROWN, J.

I CONCUR:

_____
POLLAK, P. J.

17

**TUCHER, J., Dissenting:**

I respectfully dissent from that portion of the court's opinion that extends the concept of a "*Jackson* credit" to authorize, for the first time, what might instead be called a "*Jackson* refund." (See *Jackson v. Jackson* (1975) 51 Cal.App.3d 363 (*Jackson*).) Here, the trial court ordered Ms. Siva (Mother) to refund child support she received for a period of months before anyone filed a request to modify the parties' permanent child support order. If Mr. Siva (Father) had ceased paying child support when their daughter moved into his home, the trial court could have awarded a *Jackson* credit against the resulting arrearages, but instead Father continued paying and only later sought to require Mother to refund the money. I view the trial court's order that Mother repay Father more than $18,000 in child support—amounts she lawfully received at a time when no request for orders was pending—as contrary to law. Statutes governing child support allow courts discretion in enforcing a child support order, which discretion authorizes *Jackson* credits. But the statutes do not allow retroactive modification of a child support order during a period before any petition to modify is filed, which in my view precludes the *Jackson* refund ordered here.

Determination of child support " 'is a highly regulated area of the law, and the only discretion a trial court possesses is the discretion provided by statute or rule.' " (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 283 (*Cheriton*).) "[C]ourts are required to calculate child support in accordance with the mathematical formula set forth in the statute," a process so complex it is usually delegated to a computer. (*Id*. at p. 284, citing Fam. Code, § 4055; all undesignated code references are to the Family Code.) Although the statute refers to the formula as a "guideline" (§ 4055), "adherence to the guidelines is mandatory, and the trial court may not depart from them except

1

in the special circumstances enumerated in the statutes." (*Cheriton*, at p. 284.)

State and federal law also constrains courts in modifying a child support order, once made. The majority's opinion acknowledges many of these statutes. For example, section 3653 provides in relevant part: "An order modifying or terminating a support order may be made retroactive to the date of filing of the notice of motion or order to show cause to modify or terminate, or to any *subsequent* date." (§ 3653, subd. (a), italics added.) But "a support order may not be modified or terminated as to an amount that accrued before the date of the filing of" such papers. (§ 3651, subd. (c)(1).) Nor may a support order "be set aside . . . simply because subsequent circumstances caused the support ordered to become excessive." (§ 3692.) These statutes implement federal law, which requires each state to "have in effect laws requiring" that each installment of child support "is (on and after the date it is due)—[¶](A) a judgment by operation of law, with the full force, effect, and attributes of a judgment of the State, including the ability to be enforced, [¶](B) entitled as a judgment to full faith and credit in such State and in any other State, and [¶](C) *not subject to retroactive modification* by such State or by any other State; [¶]except that" a state "may permit modification with respect to any period during which there is pending a petition for modification . . . ." (42 U.S.C. § 666, subd. (a), italics added.)

Although these statutes allow the trial court no discretion retroactively to modify the child support order for a period when no modification request was pending, another statute does authorize discretion regarding the enforcement of such an order. Section 290 provides, in relevant part, that a child support order or judgment "*may* be enforced by the court by execution . . . or contempt, or by any other order as the court *in its discretion*

2

determines from time to time to be necessary." (Italics added.)  The use of "may," as opposed to "shall," and the explicit reference to judicial "discretion" combine to empower trial courts to exercise equitable authority in deciding whether fully to enforce a child support order.

*Jackson* and its progeny showcase this equitable discretion in action, in each case addressing whether to enforce a support order with which the obligor did not comply.  *Jackson* allows a trial court to quash a writ of execution for child support arrearages covering a period when the child lived full time with the obligor parent.  (*Jackson, supra*, 51 Cal.App.3d at pp. 365–369.)  In similar circumstances but a different procedural posture, *In re Marriage of Trainotti* (1989) 212 Cal.App.3d 1072, 1075 (*Trainotti*) allows judicial discretion in a contempt proceeding for unpaid child support, and *Helgestad v. Vargas* (2014) 231 Cal.App.4th 719, 722 (*Helgestad*) allows judicial discretion in the determination of post-judgment arrearages.  These cases, and the other cases in the *Jackson* line on which the majority relies, all address the extent to which a court will enforce an existing child support order, requiring payment of arrearages accrued while the child lived with the obligor.  The cases give trial courts discretion to decide whether enforcement of the prior order would be equitable, or whether the obligor parent should instead be credited with having "directly discharged his obligation." (*Jackson*, *supra*, at pp. 368–369.)  The cases expressly rely on the court's discretionary enforcement powers to harmonize *Jackson* credits with the statutory proscription on retroactive modification of a support order.  (See, e.g., *Helgestad*, at p. 733; *Trainotti*, at p. 1075; *Jackson*, at p. 368; *In re Marriage of Wilson* (2016) 4 Cal.App.5th 1011, 1016 ["it is within the court's equitable power to deny *enforcement* of the arrears on equitable grounds" where a parent has directly supported the child].)

3

This case is different. Because Father fully complied with the existing child support order, there is no issue of enforcement here. Instead, Father's request for a refund takes us outside the equitable enforcement powers of the court and into the arena of a retroactive modification. Father characterizes the trial court's order not as retroactively modifying his obligation, but as "zeroing out" his "required payment for the months he provided in-kind support," requiring Mother to "pay [him] back for overages." This argument ignores that to reduce $18,000 in previously ordered child support payments to zero is to "modif[y] or terminate[]" Father's obligation "as to an amount that accrued before" Father filed his request for orders. (§ 3651, subd. (c)(1).) And to order Mother to pay back this money—all of which she was entitled to under the court's order when she received it—is therefore an act beyond the jurisdiction of the trial court. (*S.C. v. G.S* (2019) 38 Cal.App.5th 591, 599 ["trial court acts 'in excess of the court's jurisdiction' if it modifies support retroactive to any time before the filing of the obligor's modification motion"]; *Stover v. Bruntz* (2017) 12 Cal.App.5th 19, 26 [same].) Father's payments were not "overages." They were legal obligations "entitled as a judgment to full faith and credit in" the courts of this state. (42 U.S.C. § 666, subd. (a); § 3653, subd. (a).)

The majority opinion concludes these statutes and case law pose no bar to the trial court's order because, applying "the theory behind *Jackson* and its progeny," Father has effectively double-paid his child support. The majority appears to recognize that no case has ever awarded *Jackson* credits in the absence of arrearages, as the only cases it cites involving requests for "a refund or future offset" are unrelated to *Jackson*. (See *infra*, discussing *In re Marriage of Starr* (2010) 189 Cal.App.4th 277 (*Starr*); *Y.H. v. M.H.* (2018) 25 Cal.App.5th 300 (*Y.H.*).) But the majority fails to reckon with the

4

significance of this distinction between addressing enforcement of arrearages and ordering repayment of monies received.  In my view, this difference is dispositive.  If an obligor has not paid amounts previously ordered we are in the arena of enforcement, where the trial court has statutory authority for exercising discretion to award an offset.  (§ 290.)  But if an obligor has paid all amounts previously ordered, there is no enforcement issue and, accordingly, no statutory authority for offsetting in-kind contributions toward support of the child.  Father's obligation to pay Mother may not be retroactively "set aside," or zeroed, "simply because subsequent circumstances caused the support ordered to become excessive."  (§ 3692.)

One might plausibly ask whether refusing to extend *Jackson* credits to affirm a *Jackson* refund unfairly penalizes Father for timely paying his child support.  I do not think it does.  The moment Father came to believe custody arrangements had sufficiently changed that it was no longer fair for him to continue paying Mother at the court-ordered level, he could have filed a Judicial Council form requesting a modification.  (See https://www.courts.ca.gov/1196.htm?rdeLocaleAttr=en [including link to Jud. Council Form FL-300] [as of July 29, 2020].)  The simple act of filing and serving this form would have put Mother on notice that any further payment of child support was subject to claw-back, and it would have empowered the trial court, consistent with sections 3651, 3653, and 3692 and federal law, to award a refund of child support retroactive to that date.  " 'The Legislature has established a bright-line rule that accrued child support vests and may not be adjusted up or down.  [Citations.]  If a parent feels the amount ordered is too high—or too low—he or she must seek prospective modification.' " (*Stover, supra*, 12 Cal.App.5th at p. 26.)

5

Extending *Jackson* credits to allow for *Jackson* refunds blurs the Legislature's bright line. It deprives parents who receive and depend on child support of the certainty and repose that the statutes' bright line otherwise provides. And it undermines the equitable role that *Jackson* credits normally fulfill. In the context of a parent who has ceased paying child support because the child moved into the obligor parent's home, the obligee parent is entitled under the existing order to receive such support and can appeal to the court for enforcement when payments cease. But if the obligee agrees that non-payment is equitable under the circumstances and declines to seek enforcement until many months have passed, *Jackson* credits are available to the obligor to defeat such a "post hoc 'gotcha' " motion. (*Helgestad*, *supra*, 231 Cal.App.4th at p. 733.) A traditional *Jackson* credit allows the trial court retroactively to conform enforcement of a child support order to the parties' self-help approach, under circumstances where neither party had a strong incentive to go promptly into court petitioning for formal modification.

This salutary effect of a *Jackson* credit disappears in the context of a *Jackson* refund. Where, as here, the obligor parent continues paying court-ordered support, the receiving parent has no incentive to seek modification of the existing order and no reason (unless the obligor parent has filed a request for modification) to believe she is not entitled to spend the money she receives. When, months later, the obligor parent requests a court-ordered refund, this motion is itself a "post hoc 'gotcha.' " If properly restricted to the enforcement context, the availability of *Jackson* credits is consistent with the practical wisdom that a parent who wants a child support order to change should file papers requesting that change. (See *Stover*, *supra*, 12 Cal.App.5th at p. 26.) But a *Jackson* refund flies in the face of this rule. Here, both parties accepted the status quo for eight months, neither party seeking to

modify the support order. Then, long after Mother received and likely spent the child support she had every reason to believe was lawfully hers, the trial court's order reached back to unsettle those settled expectations.

Nothing in the two cases the majority cites regarding child support refunds or future offsets justifies the conclusion the court reaches here. *Starr* affirmed an order *denying* the obligor parent a refund for child support paid in excess of the guidelines amount. (*Starr, supra*, 189 Cal.App.4th at pp. 290–291.) In a brief discussion at the end of an opinion about other issues, the *Starr* court held that the trial court "did not abuse its discretion by declining [the] request for reimbursement." (*Id.* at p. 291.) Any inference from this ruling that the trial court had authority to have instead ordered a refund is little more than dictum, unnecessary to the result the court reached.

*Y.H.* is more complicated, but just as unhelpful as support for ordering a *Jackson* refund. In *Y.H.*, a disabled veteran who applied for social security disability (SSDI) benefits waited six years for a decision on his application. (*Y.H.*, s*upra*, 218 Cal.App.5th at pp. 302–303.) In the meantime, he paid his court-ordered child support. (*Id.* at p. 304.) When his benefits were finally approved, not only did the veteran receive a lump-sum payment of accrued benefits, but his young daughter received a similar check representing her derivative SSDI benefits. (*Id.* at p. 303.) The child's check was sent to her mother as custodial parent but was required by statute "to be applied as a credit to [the] noncustodial parent's child support obligation." (*Id.* at p. 305 [discussing § 4504, subd. (b)].) Section 4504 provides the statutory basis for awarding a credit, and perhaps a refund of overpaid child support, in a case like *Y.H.* (*Y.H.*, at p. 302, fn. 2.), but the code section is specific to "payments for the support of the child made by the federal government pursuant to the

7

Social Security Act." (§ 4504, subd. (b).)  It offers no statutory support for a *Jackson* credit or a *Jackson* refund.  The dispositive difference between *Y.H.* and this case is, then, that the child support refund in *Y.H.* was firmly anchored in the Legislature's statutory scheme governing child support, while the concept of a *Jackson* refund is not.

*Y.H.* is inapposite for policy reasons as well.  The *Y.H.* court was concerned that denying a credit for lump sum SSDI payments would have the perverse effect of discouraging an obligor parent who has applied for benefits from paying his support obligations promptly, thus causing financial harm to the child.  (*Y.H.*, *supra*, 25 Cal.App.5th at pp. 309–310.)  No such concern exists in the context before us, as there is no risk of financial harm to the child from the obligor parent fulfilling his support obligations by caring for the child.  Moreover, the obligor parent may immediately seek modification of child support so as to avoid having to effectively double-pay, unlike a parent awaiting a decision on SSDI benefits.  Any motion brought by a disabled parent to seek a refund of some portion of a derivative lump-sum benefit cannot be filed until the check arrives, so it is hardly a "post hoc 'gotcha' " motion when filed promptly thereafter.  *Y.H.* thus avoids the practical problems that I fear today's opinion will cause.

For good reason, appellate courts may be reluctant to cabin the discretion of trial courts, but in addressing child support "the only discretion a trial court possesses is the discretion provided by statute or rule." (*Cheriton*, *supra*, 92 Cal.App.4th at p. 283.)  Because I find no support in statute or rule for extending *Jackson* to a case where the obligor parent has continued paying support without requesting modification of the order, I conclude the trial court lacked discretionary authority to order

8

reimbursement here.  I would reverse with regard to the reimbursement order and affirm only as to Mother's motion for attorney's fees and costs.

_____

TUCHER, J.

Trial Court:Alameda County Superior Court

Trial Judge:          Hon. Jennifer Madden

Counsel:

Law Offices of Bradley D. Bryan, Bradley D. Bryan, for Appellant.

Ross Family Law, Renee R. Ross, Darien M. Meyer, for Respondent.