[Civ. No. 4263. Fifth Dist. Mar. 4, 1981.]

MARGIE M. COMSTOCK, Plaintiff and Appellant, v.
BERNARD E. COMSTOCK, Defendant and Appellant.

COUNSEL

Brunn, Lacey & Thayer and Timothy T. Flynn for Plaintiff and Appellant.

Martin & Hutcheson, Geoffrey C. Hutcheson and Armando Flores for Defendant and Appellant.

OPINION

STONE (W. A.), J.*—Plaintiff, whom we shall refer to as "wife," brought this action against defendant, "husband," seeking a money judgment for unpaid child support, based upon a decree of divorce entered in the State of South Dakota on December 23, 1966.

Husband appealed from that judgment contending that the trial court erred in refusing to allow his collateral attack upon that South Dakota

---

*Assigned by the Chairperson of the Judicial Council.

decree, that an intervening action in the State of Colorado based upon the Uniform Reciprocal Enforcement of Support Act precluded enforcement of the South Dakota decree in California, and that the trial court erred in failing to find the wife's action barred by the defense of laches. Wife cross-appealed contending that the trial court's calculation of the amount of unpaid child support was incorrect.

Husband has abandoned his appeal, and has advised this court that in response to wife's cross-appeal, he does not assert any issue contained in his original appeal. We, therefore, deal only with the narrow issue raised by wife's cross-appeal, whether the court erroneously interpreted the South Dakota decree in calculating the amount of unpaid child support.

The South Dakota decree awarded custody of the five minor children to wife and ordered husband to pay for their support on these terms: "...and the Defendant shall pay to the Plaintiff by way of child support the sum of Two hundred fifty and no/100 Dollars ($250.00) per month, the first payment shall be payable on or before the 10th day of January, 1967 and a like amount on or before the 10th of each consecutive month thereafter until the said children become of legal age, self-supporting or further order of the court;..."

At trial, wife urged, as she does before this court, that the language of the decree requires that the sum of $250 be paid each month by husband until the last of the five children reaches the age of majority or becomes emancipated. No evidence was presented at trial concerning the meaning of this portion of the South Dakota decree, and the court determined that at the time each of the five minor children reached the age of majority or became emancipated, the monthly amount payable by husband to wife was reduced by one-fifth, or $50 per child. The court ruled that when the child Rickey entered the army on January 29, 1969, the amount payable by husband was reduced from $250 to $200. When the child Terry entered the army, on August 27, 1970, the total was reduced to $150. When Ginger left home and became emancipated, July 1, 1973, the sum was lowered to $100. When Penny reached age 18, on May 13, 1976, the sum was reduced to $50 per month.

The court found that the youngest son, Allen, had not yet reached majority or become emancipated, and therefore the obligation to support him remained at the time of judgment, May 30, 1978. We note that Allen's date of birth was April 18, 1959. He was 19 years of age

when judgment was entered. We further note that support for the daughter Penny was terminated by the trial court upon her 18th birthday. The trial court therefore impliedly adopted wife's contention that the age of majority applicable to these proceedings was that in effect in South Dakota at the time of the divorce decree. That age was 21 for males and 18 for females.[1] Husband does not challenge this application of the law regarding age of majority, and we are not called upon to decide its propriety.

The sole question before us is the correctness of the trial court's automatic reduction of $50 from the child support order on each occasion that a child reached majority or became emancipated.

Preliminarily, we note that a support order contained in a foreign state decree of divorce may be the basis for a California judgment for unpaid support. (*Worthley* v. *Worthley* (1955) 44 Cal.2d 465 [283 P.2d 19].) However, enforcement of that portion of a foreign state decree awarding support need not be given full faith and credit by a California court. It is not a matter of right, but of comity, and discretion is given to the California court in such enforcement. *Worthley* is instructive in this regard. In that case, plaintiff wife obtained a support order by separate maintenance decree in New Jersey. Defendant husband thereafter obtained a decree of divorce in Nevada, which decree provided no support for wife. Husband paid all sums due pursuant to the New Jersey decree up to the date of the Nevada decree. He refused to pay any amounts thereafter. The Nevada decree was not challenged by the wife. The *Worthley* court noted: "Since plaintiff does not question the validity of the divorce granted by the Nevada court, that decree, being regular on its face, must be accorded full faith and credit in this state. [Citations.] The controlling questions on this appeal are, therefore, (1) whether the dissolution of the marriage terminated defendant's obligations under the New Jersey decree and, if not, (2) whether and to what extent those obligations are enforceable in this state.

"Since the full faith and credit clause compels recognition of the Nevada decree only as an adjudication of the marital status of plaintiff

[1]Section 43.0101 of the South Dakota Code of 1939, which was reenacted in 1967 as section 26-1-1 of the South Dakota Compiled Laws, provided "Minors are natural male persons under twenty-one years of age and natural female persons under eighteen years of age. The periods thus specified must be calculated from the first minute of the day on which persons are born, to the same minute of the corresponding day completing the period of minority."

and defendant and not of any property rights that may be incident to that status [citation], the effect of the dissolution of the marriage on defendant's preexisting obligations under the New Jersey maintenance decree must be determined by the law of New Jersey." (*Id.*, at pp. 467-468.)

"...Since the New Jersey decree is both prospectively and retroactively modifiable [citation], we are not constitutionally bound to enforce defendant's obligations under it. [Citations.] Nor are we bound *not* to enforce them. [Citations.] The United States Supreme Court has held, however, that if such obligations are enforced in this state, at least as to accrued arrearages, due process requires that the defendant be afforded an opportunity to litigate the question of modification. [Citations.] It has also clearly indicated that as to either prospective or retroactive enforcement of such obligations, this state 'has at least as much leeway to disregard the judgment, to qualify it, or to depart from it as does the State where it was rendered.' [Citation.]" (*Id.*, at pp. 468-469, fn. omitted.)

The *Worthley* court went on to state at page 471: "Although the question of retroactive modification has been seldom litigated, the United States Supreme Court has expressed its approval of the proposition that actions to enforce retroactively modifiable decrees should be tried in a forum that has personal jurisdiction over both parties, and that in the trial of such actions the defendant must be afforded an opportunity to set up any mitigating defenses that would be available to him if the suit were brought in the state where the alimony or support decree was originally rendered."

And at page 473, the *Worthley* court continued: "Moreover, there is no valid reason, in a case in which both parties are before the court, why the California courts should refuse to hear a plaintiff's prayer for enforcement of a modifiable sister-state decree and the defendant's plea for modification of his obligations thereunder. If the accrued installments are modified retroactively, the judgment for a liquidated sum entered after such modification will be final and thus will be entitled to full faith and credit in all other states. [Citation.] If the installments are modified prospectively, the issues thus determined will be res judicata so long as the circumstances of the parties remain unchanged...."

The court summarized its holding at page 474: "Accordingly, we hold that foreign-created alimony and support obligations are enforceable in this state. In an action to enforce a modifiable support obligation, either party may tender and litigate any plea for modification that could be presented to the courts of the state where the alimony or support decree was originally rendered."

Thus it is established that the foreign state support decree may be enforced in California, and the support may be modified to the extent that it would be modifiable in the jurisdiction of the original decree. To the extent that support in the foreign jurisdiction is modifiable retroactively, it is so modifiable in California.

Like the State of New Jersey, whose laws were dealt with in *Worthley* v. *Worthley, supra*, 44 Cal.2d 465, the State of South Dakota allows modification of support orders both prospectively and retrospectively. Examining the authorities of that state we learn: "The question presented is whether this statute has a retrospective effect and authorizes the court to modify installments of alimony which have accrued. Upon this question there is a division of opinion among the courts. See Annotation 94 A.L.R. 331. In reading our statute and looking at its general purpose and intent, we are inclined to the view that the authority of the court thereunder is not limited to a modification of future installments that might be due under the decree, but that this authority extends to all installments whether past due or to become due." (*Rudd* v. *Gerken* (1940) 67 S.D. 534 [295 N.W. 491-492].)[2]

Thus we determine that we are dealing with a decree which is enforceable by California judgment and modifiable to the extent allowed by South Dakota, and which may be modified both prospectively and retrospectively as circumstances dictate.

■ In the case before us, husband had notice of the California proceedings and appeared both personally and through counsel at trial. However, neither party offered proof to the trial court that would provide the basis for modification of the support provisions.

Thus, the trial court had before it the lump sum child support provision of $250, payable on the 10th of each month until "the said children

---

[2]The quoted portion from *Rudd* was approved in *Eggers* v. *Eggers* (1967) 82 S.D. 675 [153 N.W.2d 187, 191-192]. *Eggers* also overruled *Rudd* on an unrelated point.

become of legal age, self-supporting or further order of the court." It is clear that the trial court in the instant proceeding was of the opinion that husband's obligation to support each minor child terminated upon such child reaching majority or becoming emancipated. Thus, the support payments were held to have automatically decreased by one-fifth, or $50, upon each child's majority or emancipation, without regard to the needs or circumstances of the parties.

A similar circumstance occurred in *Spivey* v. *Furtado* (1966) 242 Cal.App.2d 259 [51 Cal.Rptr. 362]. Not only is that case instructive on this point, but its resolution is sensible. An order was made of $350 per month "'. . .for the support and maintenance of the said minor children; said payments to continue until the further order of the court." (*Id.*, at p. 261). No breakdown for the allowance for each child was made. Of the three children who were all minors at the time the divorce decree was entered, two had reached majority at the time of the subsequent action against the father's estate for unpaid child support.

The trial court gave judgment for the entire $350 per month sum, regardless of the fact that during the intervening time, two of the children had reached majority. In reversing this portion of the judgment, the *Spivey* court directed the trial court to "determine (with or without additional evidence) the proper allowance, not exceeding $350, to be awarded to respondent for support of Glenda and Elaine Spivey after Richard Spivey attained majority, and for Elaine Spivey after Glenda Spivey attained majority." (*Id.*, at p. 267.)

In reaching this conclusion, the *Spivey* court reasoned at pages 262-263: "Richard and Glenda each became an adult at age 21. [Citation.] The obligation to support ceased at this time. [Citations.] The obligation of the wife to support the children ended on the same day as the husband's responsibility.

"The duty of both parents having ceased as each child attained majority, and the father having terminated his payments for their support before that date, the question is whether the mother may now have the decree enforced for its full amount. It should not be so enforced automatically for installments accruing after each child reached the age of 21. [Citations.]. . .This does not mean, however, that the award of $350 could be reduced by one third merely by the arrival of the dates of majority of the elder children, or by the unilateral action of the father. As pointed out in the decisions of *Cosgriff* v. *Cosgriff* (N.D. 1964) 126

N.W.2d 131, and *Gordon* v. *Ary* (Mo.App. 1962) 358 S.W.2d 81, where a decree provides for a lump sum payment by a father for support of several children, the father cannot reduce proportionately the amount paid as each individual child reaches 21, because the ratio of the amount needed to maintain the children remaining under 21 to the total amount provided in the decree may be greater than the ratio of the number of children remaining under 21 to the total number of children to which the decree originally applied. Besides, the amount properly allowable for child or children who were still minors may have increased between the date of the decree of divorce and the respective dates on which the eldest child, Richard, became an adult or the elder children became adults, because of additional needs, because of inflationary developments, because of enhanced financial condition of the father, or because of a combination of these circumstances."

The court continued at pages 263-264: "...Nor will it constitute retrospective modification upwards if the trial court determines that the allowance for support of each remaining minor should be more than one third of $350, because there never has been a judgment fixing the amount of allowance for each minor at any specific amount."

We likewise hold that this cause should be remanded for a determination by the trial court what reduction in child support, if any, is dictated by the circumstances of the parties upon each child reaching majority or becoming emancipated. In this manner the total accrued but unpaid child support may be calculated and become the amount of the judgment in this action.

In so holding, we are mindful that neither party at trial offered any evidence on the question of an appropriate reduction of the lump sum amount upon each child's majority or emancipation. Wife proved her foreign state decree. The burden of proof then shifted to husband to prove that the total support should be reduced upon each child's majority or emancipation. He failed to carry that burden. The judgment giving him the benefit of an automatic $50 reduction on each such occasion was erroneous.

The judgment on wife's cross-appeal is reversed, and the cause remanded for further determination in accordance with the principles expressed herein. Additional evidence may be taken.

Pursuant to his expressed intention to abandon his appeal, husband's appeal is dismissed.

Wife is awarded costs on appeal and cross-appeal.

Hopper, Acting P. J., and Zenovich, J., concurred.

A petition for a rehearing was denied April 2, 1981.