Filed 1/16/26  Marriage of Reasin CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re the Marriage of SUSAN D. and PETER A. REASIN. | |
| SUSAN D. REASIN,<br><br>        Appellant,<br><br>              v.<br><br>PETER A. REASIN,<br><br>        Respondent. | G064293<br><br>(Super. Ct. No. 07D011265)<br><br>O P I N I O N |

        Appeal from an order of the Superior Court of Orange County, Matthew Reichman, Temporary Judge. (Pursuant to Cal. Const., art VI, § 21.) Affirmed.

        Susan D. Reasin, in pro. per., for Appellant.

        No appearance for Respondent.

In 2011, Susan Reasin and her ex-husband, Peter Reasin, agreed to a stipulated judgment on reserved issues in their dissolution proceeding including, among other things, child support for their three minor children. Peter[1] was ordered to pay $1,750 per month in child support, without any allocation between the three children.

As each child reached their majority, Peter unilaterally decreased the amount of his monthly child support. By 2022, the Orange County Department of Child Support Services (DCSS) claimed he was in arrears in an amount in excess of $80,000. Peter sought an order vacating the arrearages or reducing the amounts owed based on each child reaching the age of majority.

Based on *Spivey v. Furtado* (1966) 242 Cal.App.2d 259 (*Spivey*) and *Comstock v. Comstock* (1981) 116 Cal.App.3d 481 (*Comstock*), the trial court ordered an allocation of the support award among the three children and ordered a recalculation of Peter's arrearages based on the allocation.

Susan appeals the trial court's allocation order as an improper retroactive modification of child support. We disagree. The trial court did not modify the amount of support. Instead, it merely allocated the total child support among the children, so that a proper amount of arrearages could be determined after the children had aged out of the support obligation. The court had discretion to do this under the applicable statutes, as well as *Spivey* and *Comstock*. Because Susan raises no issue with the allocation itself, we affirm the judgment.

---

[1] As is customary in family law cases, we refer to the parties by their first names to avoid confusion and mean no disrespect in doing so.

FACTUAL AND PROCEDURAL BACKGROUND

At the time of their marital dissolution, Susan and Peter had three minor children, born in 1993, 2001, and 2003.[2] A stipulated judgment on reserved issues was entered in the dissolution matter on June 21, 2011.[3] In the judgment, the trial court ordered Peter to pay Susan a total of $1,750 in monthly child support beginning on November 15, 2010. Child support was payable to Susan twice monthly: one-half on the first of the month, and one-half on the 15th of the month. The order did not make any allocation of the $1,750 amount as between the three then-minor children.

The judgment required Peter to continue paying child support in this manner "until further order of the court or until the child marries, dies, is emancipated, reaches the age of 19, or reach[es] 18, is not a full-time high school student, and is not self-supporting, whichever occurs first." Both Peter and Susan voluntarily waived spousal support.

---

[2] The couple also had a fourth child who had already reached age 18 by the time the stipulated judgment was entered.

[3] Susan elected to proceed with a settled statement rather than a reporter's transcript of oral proceedings. She later filed a motion for leave to file an amended settled statement and appendices. We denied her motion to file an amended settled statement (Appendix C) on April 25, 2025, but treated the remainder of her motion as a motion to augment the record.

We grant the motion to augment only as to Appendix D, the judgment as to reserved issues entered on June 20, 2011. There is no indication that Appendices A and B (procedural timeline of events and narrative history of support order, respectively) were presented to the trial court or that they were even in existence before the allocation award was entered. They may not be considered on appeal. (See *Pulver v. Avco Financial Services* (1986) 182 Cal.App.3d 622, 632.) Appendices E and F are minute orders already in the clerk's transcript. Appendix G is a listing of legal authorities, which is not necessary to include in the record.

In May 2022, DCSS filed a notice in the dissolution case as an intervenor, substituting itself as the payee of any current support, support arrears, and medical support. Peter then filed a request for order (RFO) in November 2022 asking the trial court to (1) vacate his child support arrearages and release all liens and levies resulting from those arrearages, (2) return any monies garnished since their youngest child had "aged out," or (3) "reduce the support arrearages according to each child aging out," and credit Peter for "any and all" payments he had made for each child who had aged out.

Peter claimed he and Susan had "made agreements" in the past that child support would decrease as each of the three children aged out. Pursuant to these alleged agreements, Peter admitted he started to pay Susan "less than the $1750" as the children got older. The first adjustment he claimed to make was when the oldest of the three children graduated from high school in 2012. The second occurred in 2020 when the middle child graduated high school, and the third adjustment occurred in 2022 when the youngest child graduated high school. Peter averred all three of these adjustments were made pursuant to the alleged agreements with Susan pursuant to which she agreed to accept "specific reduced amount[s] for child support."

Peter claimed there was "never an issue" about the arrangement, and he was unaware that Susan was claiming an arrearage.

DCSS filed a response to Peter's RFO, attaching a report ledger of the arrearages which DCSS claimed totaled $84,130.99 plus interest. The ledger showed arrears beginning to accrue in June 2012. DCSS further argued Peter had failed to provide a monthly breakdown of amounts ordered and amounts paid as would be required by someone moving the court for a

4

judicial determination of arrearages under Family Code section 17526.[4] Nevertheless, DCSS asked the trial court to take testimony regarding the agreement Peter alleged he had with Susan.

Susan also filed a response to Peter's RFO, opposing any adjustment to the amounts owed by Peter. She claimed Peter had paid no child support between 2009 and 2011, before the judgment was entered. She also disputed that she ever agreed to a reduced or allocated amount of support based on the children's ages; rather, she said Peter unilaterally reduced his support payments. Susan said she had repeatedly raised concerns with Peter about deducting amounts from his support payments.

When the RFO came on for hearing on February 28, 2023, the trial court found *Spivey*, *supra*, and *Comstock*, *supra*, were potentially applicable to the case. The court also found, "an extended evidentiary hearing [wa]s needed," and it continued the matter to allow an exchange of witness and exhibit lists.

Both Peter and Susan testified at the eventual hearing. The trial court concluded it was required to consider a proper allocation of child support pursuant to the holdings in *Spivey* and *Comstock*. The court allocated the $1,750 monthly child support payment as follows: 15 percent for the oldest child ($262.50), 35 percent for the middle child ($612.50), and 50 percent for the youngest child ($875). The court denied Peter's request for any additional credit. DCSS was ordered to recalculate the arrearage based on the allocation and provide a new report.

Susan filed a timely notice of appeal.

_____

[4] All further statutory references are to the Family Code unless otherwise noted.

DISCUSSION

I.

THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY ALLOCATING THE CHILD
SUPPORT AWARD FOR PURPOSES OF DETERMINING PETER'S ARREARAGE

We review for abuse of discretion a postjudgment order relating to child support arrears; it is directly related to the calculation of the original child support award. (See *S.C. v. G.S.* (2019) 38 Cal.App.5th 591, 597–598.)

Ordinarily, "a support order may not be modified or terminated as to an amount that accrued before the date of the filing of the notice of motion or order to show cause to modify or terminate." (§ 3651, subd. (c)(1).) However, the duty to provide child support terminates as a matter of law once a child is married, reaches 18 years of age, or, if the child is in high school and not self-supporting, either completes the 12th grade, or reaches age 19, whichever occurs first. (§ 3901, subd. (a)(1).)

When multiple children are involved, and the support order does not specify how much support is to be paid for each child, the situation is more complicated. "[W]here a decree provides for a lump sum payment by a father for support of several children, the father cannot reduce proportionately the amount paid as each individual child reaches [majority], because the ratio of the amount needed to maintain the children remaining under [19] to the total amount provided in the decree may be greater than the ratio of the number of children remaining under [19] to the total number of children to which the decree originally applied." (*Spivey, supra,* 242 Cal.App.2d at p. 263.) If the payee comes to court to enforce the support order, the court is empowered to withhold those amounts which "would go beyond the time when the obligation of both parents to support a child or children comes to an end." (*Ibid.*) Quoting extensively from *Spivey, Comstock*

6

held that the trial court is bound to determine "what reduction in child support, if any, is dictated by the circumstances of the parties upon each child reaching majority or becoming emancipated. In this manner the total accrued but unpaid child support may be calculated and become the amount of the judgment." (*Comstock*, *supra*, 116 Cal.App.3d at p. 489.)

Here, the support order entered in 2011 echoed the language of section 3901 by stating Peter's support obligation was to continue "until further order of the court or until the child marries, dies, is emancipated, reaches the age of 19, or reach[es] 18, is not a full-time high school student, and is not self-supporting, whichever occurs first." Assuming all three children finished high school, Peter's obligation to pay child support ceased as each child reached the age of 19 or graduated high school.[5]

As such, the trial court's order allocating the total $1,750 support payment among the three children was not a retroactive modification of an ongoing obligation. It was a recognition that Peter's child support obligation "had already terminated *as a matter of law*." (See *In re Marriage of D.H. and B.G.* (2023) 87 Cal.App.5th 586, 593.) At that point, the only issue for the court to resolve was the amount Peter owed in back child support, if any.

---

[5] The youngest child would have reached age 19 in 2022.

Allocating the $1,750 as a percentage between the three children was a reasonable way to make that determination.[6]

Susan argues that the allocation violates the terms of her agreement with Peter on support, because she allegedly waived her right to spousal support on the understanding that Peter would pay $1,750 per month in child support until the last child reached their majority. There is no evidence in the record supporting Susan's claim. The stipulated judgment shows that both sides waived spousal support. In any event, the trial court gave Susan an opportunity to present evidence of the parties' intent when the stipulated judgment was drafted and she did not do so.

Furthermore, Susan's claim to full unallocated support is undercut by the language of the child support award itself. By its terms, Peter's child support obligation terminates when "the child" marries, dies, is emancipated or reaches the age of majority. The use of the singular in the order is further support for the trial court's conclusion that an allocation was appropriate to adjust the support arrears based on each individual child aging out. If the parties had intended for Peter to pay the full $1,750 until the youngest child aged out, they could have said so. There is no evidence they did.

---

[6] In so concluding, we do not wish to imply that we condone Peter's unilateral cessation or modification of child support payments without seeking a judicial determination as to how the monthly support amount needed to be adjusted once the children began reaching the age of majority. If Peter wished to allocate support amongst the remaining minor children, he should have sought a modification in the family court. Given the posture of the case at the time the trial court was hearing the appealed order, however, it chose a reasonable method of resolving the issue.

Susan does not raise any issue with the percentages and calculations the court made, only with the allocation itself. We find no error.

II.

PROCEDURAL PROBLEMS ON APPEAL

Susan argues that she was denied due process because the trial court displayed bias in favor of Peter and did not give her a meaningful opportunity to present her case. We find this argument difficult to assess because Susan has not provided an adequate record. Her statement of facts does not contain any record citations, as are required under California Rules of Court, rule 8.204(a)(1)(C). We are thus unable to substantiate the version of events she seeks to establish in her brief.

Susan also failed to provide a complete record of the trial court proceedings which would allow us to ascertain an accurate timeline.[7] After the February 28, 2023 hearing, the court continued the matter to May 2, 2023 to allow the parties to prepare for an evidentiary hearing. There is no minute order from May 2 in the clerk's transcript, and the register of actions indicates the hearing was rescheduled by stipulation. We presume the hearing was rescheduled to September 6, 2023, because that is the date of the next minute order in the register of actions. At the September 6 hearing, the court again continued the matter to November 14, 2023. The register of actions shows a minute order from November 14, but Susan failed to designate this minute order for inclusion in the clerk's transcript.

---

[7] As already mentioned, Susan's motion to augment included her own procedural summary. We may not rely on this document in our inquiry because it is not a substitute for the official records of the trial court. Nor has Susan shown this document was ever considered by the trial court.

In the proposed settled statement, Susan asserts that on February 28, 2023, the trial court stated: "If I were to rule now, I would have to award Mother due to all her evidence, where Father has no evidence." She says the trial court nevertheless continued the case and brought up *Spivey* and *Comstock* without Peter's prompting. She argues the trial court improperly gave Peter legal advice from the bench. This, she claims, ultimately led to the trial court deciding to allocate the support award.

To the extent the trial court made the statement Susan claims, we do not view these actions as an example of bias in Peter's favor. The court has the power to "amend and control its process and orders so as to make them conform to law and justice." (See Code Civ. Proc., § 128, subd. (a)(8).) If the court is aware of legal authority controlling the dispute before it, it has the power to bring that authority to the parties' attention and seek their input on how the authority should impact its decision. This is what the court seems to have done.

Moreover, in the trial court's corrections to the settled statement, the court indicated Susan did not request an evidentiary hearing and counsel for both parties had requested a ruling based on the briefs. The court also gave both parties the "opportunity to clarify whether the child support order of $1750 per month was intended to remain as a sum certain order after the minor children reached the age of majority or whether the support amount was intended to be allocated based on the percentage of support per child set forth in the Family Code." And "both parties had the opportunity to clarify the intent of the support order when drafted but did not." There is no evidence the trial court exhibited any bias in favor of Peter.

10

DISPOSITION

The judgment is affirmed. Appellant to bear her own costs on appeal.


BANCROFT, J.*

WE CONCUR:


MOTOIKE, ACTING P. J.


DELANEY, J.

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.